FIRE COMMISSIONER OF BOSTON *vs.* MICHAEL A.
JOSEPH & another.

Suffolk.    April 16, 1986. — October 30, 1986.

Present: PERRETTA, KAPLAN, & WARNER, JJ.

*Practice, Civil,* Action in nature of certiorari, Presumptions and burden of
proof, Review respecting civil service. *Civil Service,* Judicial review,
Findings by commission. *Administrative Law,* Judicial review, Evidence.
*Evidence,* Hearsay, Declaration against interest, Declaration of deceased
person, Admissions and confessions.

On a fire fighter's appeal to the Civil Service Commission from his discharge
by the fire commissioner of Boston after the fire fighter had been indicted
for involvement in setting a fire and had been acquitted, the Civil Service
Commission erred in concluding that the testimony of two witnesses
concerning the fire fighter's admissions of involvement in the fire re-
quired corroboration, even though the testimony had been found to be
credible, and that the fire commissioner had failed to satisfy his burden
of proving just cause for the discharge. [81-83]

CIVIL ACTION commenced in the Superior Court Department
on August 12, 1983.

The case was heard by *James J. Nixon,* J.

*Rosemary Ford (Thomas E. Finnerty* with her) for Michael
A. Joseph.

*Janet M. Robitaille,* Special Assistant Corporation Counsel,
for the plaintiff.

PERRETTA, J. On April 10, 1978, a building located on
Washington Street in the West Roxbury section of Boston was
destroyed by fire. After investigation, an indictment was
brought against fire fighter Michael A. Joseph, charging him
with involvement in the fire. Although Joseph was acquitted
on the indictment, the fire commissioner concluded, after a
hearing under G. L. c. 31, § 41, that Joseph did "aid, counsel
and procure the burning of a building" and ordered him removed

from the fire department. Joseph appealed his removal to the Civil Service Commission (commission) pursuant to G. L. c. 31, § 43. The commission found, notwithstanding credible testimony setting out Joseph's admissions to procuring the burning of the building, that the fire commissioner had failed to satisfy his burden of proving that there was just cause for Joseph's discharge and ordered that he be reinstated. The fire commissioner then brought a complaint in the nature of certiorari. A Superior Court judge concluded that the commission had placed undue reliance on the fact of Joseph's acquittal on the criminal charges, thereby requiring the fire commissioner to prove just cause beyond a reasonable doubt. The judge set aside the decision of the commission and affirmed that of the fire commissioner. On Joseph's appeal (the commission took no appeal from the reversal of its decision), we affirm the judgment but for reasons different from those of the Superior Court judge.

1. *Evidence.*

We relate the evidence presented to the commission's hearings officer. First, by way of background, Thomas Timmons and Robert Rahwan owned Jado's Cafe, a bar located within the building in question. At the time of the fire that destroyed Jado's, there were two mortgages on the building and two on the business in the aggregate amount of $60,000. Of the four mortgages, two were second mortgages held by Jack Fascinello. Joseph was a patron of Jado's and as a result knew Timmons and Rahwan. According to Joseph's testimony, business at Jado's was slow in 1976. Timmons and Rahwan asked him if he would be interested in buying the bar, but he was not. Joseph did, however, introduce the men to his father, who lent them $10,000. On April 10, 1978, Jado's was destroyed by fire. Timmons and Rahwan received $55,000 in insurance proceeds, renegotiated their debts, and relocated their business to a nearby property that they had purchased some nine to twelve months earlier.

Because gasoline was discovered at the fire's point of origin as well as on debris found at the scene, fire officials were of the opinion that the fire had been set. Investigation led the

police to Thomas Boughter,[1] who gave a statement to them. In this statement, Boughter indicated that Joseph had approached Joseph Brennan to set the fire at Jado's, and that Brennan had, in turn, enlisted Boughter's assistance. Boughter admitted that he and Brennan had set the fire, and also related that Brennan's legs were burned in the fire. By the time of the hearing, Brennan had died (of causes unrelated to injuries sustained in the fire).

Timmons testified that about five days after the fire he went to the hospital to speak to Brennan, who was being treated for second and third degree burns on his legs.[2] The hearings officer admitted in evidence, de bene, Timmons' account that Brennan told him that he and another man, named Marino,[3] set the fire at Jado's for "Mike Joseph," who had "put [Brennan] up to the fire" with an offer of fifty dollars and future rewards.

Timmons then related that he tried to speak with Joseph the same day as his conversation with Brennan, but Joseph would not talk with him. Without objection by Joseph, Timmons testified that he did speak with Joseph in December, 1978. At that time Joseph told Timmons that he was "sick of taking the heat for this thing, that it was nothing but a business deal . . . . It wasn't personal, and that somebody put him up to it." When prodded by Timmons, Joseph told Timmons that Jack Fascinello (the holder of the two second mortgages on Jado's) "was behind the fire."

Rahwan testified, without objection by Joseph, that when he learned of Joseph's statements to Timmons, he (Rahwan) soon thereafter also spoke with Joseph, asking if it was true that he was involved. Joseph told Rahwan that "Fascinello had hired him to hire two wild guys," that he had introduced Fas-

---

[1] Thomas Boughter was indicted for but acquitted of burning Jado's.

[2] Timmons testified that he went to see Brennan because a former employee at Jado's had told him that he had overheard a conversation that Brennan was in the Faulkner Hospital being treated for burns suffered in the fire at Jado's . The hearings officer allowed this testimony for the limited purpose of showing why Timmons went to see Brennan and gave it no other substantive or probative value.

[3] This is the only reference in the record to the name "Marino."

cinello to Brennan and Boughter for the purpose of burning Jado's, and that he had told all of this to Timmons.

After the conversation between Rahwan and Joseph, Rahwan and Timmons stopped making payments on the debt still owed Fascinello. When Fascinello foreclosed on his mortgage, Rahwan and Timmons met with the officers investigating the fire. Pursuant to instructions from the officers, Rahwan had another conversation with Joseph. Without objection from Joseph, Rahwan related his conversation with Joseph which again contained Joseph's admissions to his involvement as well as a new fact — Joseph told Rahwan that Fascinello planned to transfer the bar to Joseph after the fire.

Joseph testified and denied that Timmons or Rahwan had ever accused him of involvement in the fire, that he had ever admitted such involvement to Timmons or Rahwan, and that he had any role in the burning of Jado's. Joseph's brother appeared at the hearing and attested to Joseph's reputation for truth and veracity.

2. *The Commission's Decision.*

Based upon the recited evidence, the commission's hearings officer made ten neutral findings of fact; that is, although he found that the fire had been set and acknowledged that Joseph had been acquitted on the indictment, he made no findings in resolution of the disputed fact of Joseph's involvement. The hearings officer refrained from making such findings because of his conclusion that the fire commissioner had failed to present sufficient evidence in support of the charge against Joseph.

This conclusion was based upon the following evidentiary rulings and reasoning. Boughter was not present at the hearing, and his statement directly inculpating Joseph was offered through the police officer who took Boughter's statement and reduced it to writing. Although the fire commissioner argued that the statement should be admitted because of Boughter's unavailability, the hearings officer found that sufficient attempt had not been made to secure Boughter's presence for purposes of confrontation by Joseph.[4] As for Brennan's statement to

---

[4] In arguing in support of the judgment, the fire commissioner contends that Boughter's unavailability was amply demonstrated but that aside from

Timmons (that Brennan had set the fire at Joseph's request), the hearings officer found that it had not been shown that Brennan's statement had been made in good faith. Consequently, the requirements of G. L. c. 233, § 65 (declaration of deceased person exception to the rule against hearsay), had not been met.[5] In view of the hearings officer's conclusions as to each of the statements, they constituted hearsay inadmissible in judicial proceedings. Although the hearings officer nonetheless could have accepted the statements in evidence (see, e.g., *Dwyer* v. *Commissioner of Ins.*, 375 Mass. 227, 236 [1978]), he did not.

With the exclusion of Boughter's and Brennan's statements, all that remained as evidence of Joseph's involvement in the fire were his admissions to Timmons and Rahwan, as testified to by them and denied by Joseph. That the hearings officer accepted and believed the testimony of Timmons and Rahwan and disbelieved Joseph's denials is clear from the hearings officer's conclusions that: (1) "It must be kept in mind that, even though the testimony of Timmons and Rahwan is mutually corroborative, they are business partners and would be expected to relate similar versions of events"; (2) "This is not to suggest

---

that, the hearings officer should have suspended the hearing so that further attempts to secure Boughter's presence could be made. We see no error in the hearings officer's refusal to accept casually made hearsay statements to the effect that, if present, Boughter would invoke his right to refuse to testify and that a commission subpoena to a person stationed at an out-of-State military base would not be honored.

[5] The fire commissioner argued before the hearings officer that Brennan's statement was also admissible as a declaration against penal interest. The hearings officer made no ruling on that exception to the rule against hearsay. We see no error in his ruling concerning good faith, and, in light of the conclusion we reach in part 3 of this opinion, we need not consider whether the statement should have been admitted in evidence as a statement against penal interest. We note in passing, however, that, given the hearings officer's conclusions concerning a lack of evidence to corroborate any of the hearsay presented, see *infra*, it is unlikely that he would have admitted the statement as one against penal interest. See *Commonwealth* v. *Pope*, 397 Mass. 275, 279-281 & n.7 (1986): "We need not decide whether the government must satisfy the same standard of clear corroboration when it introduces an *inculpatory* statement against penal interest as must the defendant before introducing an *exculpatory* statement against penal interest" (emphasis in original). *Id.* at 280.

that they are not telling the truth, only that the corroborative value to each other is less than it would be if they were independent parties"; and (3) "Even though there is no evidence impeaching the testimony of Timmons and Rahwan and even though their testimony was credible it is insufficient in and of itself to satisfy the burden of the Appointing Authority."

To dispel any semblance of inconsistency or contradiction between his conclusions that, although Timmons and Rahwan were credible, their testimony was insufficient, the hearings officer further stated: "One is struck by the fact that all the concerned persons here were acquainted and in many cases, well acquainted . . . . In such circumstances, it is too much to ask that second hand testimony alone be considered adequate to find [Joseph] guilty of the charged offense[s]." [6] The commission accepted and adopted the report of its hearings officer.

*3. Discussion.*

In an action in the nature of certiorari, the "court will exercise its discretion to correct only those errors which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public." *Murray* v. *Second Dist. Court of E. Middlesex,* 389 Mass. 508, 511 (1983). Although we agree with the Superior Court judge's conclusion that such error here exists, we do not accept his analysis of the commission's record which is also before us. See *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.,* 377 Mass. 897, 903 (1979).

General Laws c. 31, § 43, as appearing in St. 1981, c. 767, § 20, and as here pertinent, provides: "If the commission by a preponderance of the evidence determines that there was just cause for an action taken against such person it shall affirm the action of the appointing authority, otherwise it shall reverse such action and the person concerned shall be returned to his

---

[6] The "circumstances" cited by the hearings officer are that: (1) Joseph and his brother had known Timmons and Rahwan "for years"; (2) Timmons and Rahwan had borrowed money from Joseph's father; (3) everyone involved knew Jack Fascinello; (4) an acquaintance of Joseph's lived above Jado's; and (5) Timmons and Rahwan knew, "at least slightly," the "alleged arsonists," Boughter and Brennan.

position without loss of compensation or other rights; provided, however, if the employee, by a preponderance of evidence, establishes that said action was based upon harmful error in the application of the appointing authority's procedure, an error of law, or upon any factor or conduct on the part of the employee not reasonably related to the fitness of the employee to perform in his position, said action shall not be sustained. . . ."

A proposition is proved by a preponderance of the evidence "if it is made to appear more likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the mind or minds of the tribunal notwithstanding any doubts that may still linger there." *Sargent* v. *Massachusetts Acc. Co.,* 307 Mass. 246, 250 (1940). See also Liacos, Massachusetts Evidence 38 (5th ed. 1981). Hence, the commission was required, under § 43, to affirm the decision of the fire commissioner if it determined that it was more probably true than not that Joseph did aid, counsel or procure the burning of Jado's. Cf. *School Comm. of Brookline* v. *Bureau of Special Educ. Appeals,* 389 Mass. 705, 715-716 (1983).

· Even treating Joseph's admissions to Timmons and Rahwan as hearsay, but see Liacos, Massachusetts Evidence 276 (5th ed. 1981), those hearsay statements would be admissible in judicial proceedings as substantive evidence of the facts admitted. It follows that the fire commissioner met his burden of proof with the testimony of Timmons and Rahwan (cf. *Commonwealth* v. *Frisino,* 21 Mass. App. Ct. 551, 553 [1986]; *Commonwealth* v. *Stovall,* 22 Mass. App. Ct. 737, 741 [1986]), and was entitled to have his decision affirmed if Timmons and Rahwan were found to be credible, as they were.

The commission committed error in requiring, as matter of law, evidence to corroborate Timmons' and Rahwan's testimony. Joseph's statements to them were admissions and not declarations against penal interest, see Liacos, Massachusetts Evidence 323 (5th ed. 1981), thereby making corroboration unnecessary. Compare *Commonwealth* v. *Pope,* 397 Mass. 275, 280 (1986). It would be anomalous to conclude that verdicts and judgments rendered in judicial proceedings can be based upon hearsay evidence (see *Commonwealth* v. *Foley,*

358 Mass. 233, 237 [1970]; *Commonwealth* v. *Frisino,* 21 Mass. App. Ct. at 553) but that such evidence would be insufficient support for the commission's decision.

As earlier noted, the commission expressly found that Timmons and Rawhan were credible and that their testimony had not been impeached (thereby implicitly rejecting Joseph's denials of his conversations with and admissions to them). The commission's decision that Joseph be reinstated is based solely upon the erroneous conclusion that, as matter of law, credible testimony was insufficient for want of corroboration. In these circumstances, there is no need to remand the matter to the commission for further consideration. Moreover, a remand to the commission for consideration of a reduction of the penalty under § 43 ("[t]he commission may also modify any penalty imposed by the appointing authority") is also unnecessary in view of the charges.[7] Cf. *Police Commr. of Boston* v. *Civil Serv. Commn.,* 22 Mass. App. Ct. 364, 370-372 (1986).

*Judgment affirmed.*

---

[7] There is no merit to Joseph's contention that his acquittal on the indictment precludes action on the fire commissioner's charge that he "did aid, counsel and procure the burning of a building." See *Commissioners of Civil Serv.* v. *Municipal Court of the Brighton Dist.,* 369 Mass. 166, 173-174 (1975), cert. denied sub nom. *Patuto* v. *Commissioners of Civil Serv.,* 429 U.S. 845 (1976).