## KATHLEEN DELANEY *vs.* JOHN M. REYNOLDS.

No. 02-P-1600.

Worcester. April 2, 2004. - April 14, 2005.

Present: PERRETTA, LAURENCE, & McHUGH, JJ.

*Negligence,* Causation, Foreseeability of harm. *Proximate Cause. Practice, Civil,* Summary judgment.

Discussion of the state of the law concerning a defendant's civil liability for a plaintiff's self-inflicted injury or death. [241-244]

In a negligence action brought by a plaintiff after she shot and injured herself with a gun belonging to the defendant, alleging that the defendant negligently kept a loaded gun in a place readily accessible to her, despite knowing that she had serious emotional and mental problems, the judge erred in granting summary judgment in favor of the defendant, where given the plaintiff's evidence that she committed the act believing that the gun was unloaded, the issue whether her act was intended to cause serious injury or death turned on a question of fact, namely, her intention at the time she pointed the gun at herself and pulled the trigger. [244-245]

CIVIL ACTION commenced in the Superior Court Department on May 14, 2001.

The case was heard by *John S. McCann*, J., on a motion for summary judgment.

*Roger J. Brunelle* for the plaintiff.

*Kenneth W. Terrell* for the defendant.

PERRETTA, J. After Kathleen Delaney shot and gravely injured herself with John M. Reynolds's gun, she brought this action against him. The action is grounded on allegations that although Reynolds knew that Delaney had serious emotional and mental problems, including thoughts of suicide, he nonetheless negligently kept his loaded gun in a place readily accessible to her. The judge granted Reynolds's motion for summary judgment on the ground that Delaney's independent act of shooting herself was a superseding cause of her injuries. We conclude

that whether Delaney intended to commit suicide was one of several disputed material questions of fact and reverse the judgment.

1. *The facts.* We relate the facts as they appear in the materials submitted by the parties on Reynolds's motion for summary judgment. Sometime in July of 1998, Delaney and Reynolds, a police officer, began to live together at Reynolds's house. It was Reynolds's practice to store his handgun, loaded and unlocked, in his bedroom in a duffle bag or in a bureau drawer. The handgun was not equipped with a trigger lock. Reynolds was aware of the fact that Delaney knew where he kept his handgun. He was also aware of the fact that Delaney was receiving ongoing and active treatment for substance abuse and depression.

In the month leading up to May 8, 1999, the date of Delaney's self-inflicted injuries, Reynolds noticed that recent changes in her medication caused her to experience depression, feelings of isolation, and fatigue. Although Delaney claims to have informed Reynolds during this time that she previously had attempted to commit suicide by means of automobile exhaust inhalation, Reynolds denied having any knowledge of previous suicide attempts. On another occasion, Delaney claims and Reynolds denies, she told him that she had "had enough of this and [she] wanted to end [her] life." Reynolds's response was to hand Delaney his gun and instruct her to go outside so as not to make a mess in his house. Although Delaney took the gun and went outside, she did not shoot herself. When she went back into the house, Reynolds informed her that the gun was unloaded. Delaney also claimed that later that month she told Reynolds during a telephone conversation that she hated her life and wanted to die.

On the night of May 7, 1999, Delaney left Reynolds's residence to attend an Alcoholics Anonymous meeting. She purchased and smoked crack cocaine on the way to the meeting, and stopped at a cocktail lounge where she drank two "White Russian" cocktails on her way back from the meeting. Upon arriving home, Delaney saw that Reynolds was asleep on the living room sofa. She then began doing light household chores while drinking vodka mixed with lemonade. When Reynolds awoke, he confronted Delaney about her substance abuse. An

argument ensued, and Reynolds ordered Delaney to move out of the house. Delaney went to the second level of the house and to the master bedroom she shared with Reynolds in order to pack her belongings.

While packing, Delaney noticed Reynolds's duffle bag on the bedroom floor. She reached into the bag, removed his handgun, left the bedroom, and returned to the staircase. Reynolds was still on the sofa in the living room. Descending the stairs, Delaney aimed the gun at a window and pulled the trigger twice. The gun did not fire. Reynolds jumped from the sofa, and Delaney ran back up the stairs with him in pursuit. Delaney reached the master bedroom before Reynolds, put the gun beneath her chin, and pulled the trigger. This time the gun fired. A bullet entered her chin and exited from her right cheek. At the time of the medical treatment for her injury, Delaney tested positive for cocaine and had a blood alcohol level of .165.

Concluding that Delaney's injuries were deliberately self-inflicted, the judge treated the case as analogous to one involving liability in negligence for the suicide of another and ruled that her "voluntary act of using the gun to inflict harm upon herself was the intervening and superseding cause of [her injury]." Based on the events of May 8, Delaney argues that when she put Reynolds's gun beneath her chin and pulled the trigger, she intended neither to injure herself nor to commit suicide. Rather, she believed the gun to be unloaded.

2. *Suicide as an intervening and superseding cause of injury.* There are four elements to a negligence claim: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; (3) causation; and (4) actual loss by the plaintiff. See *Glidden* v. *Maglio*, 430 Mass. 694, 696 (2000); *Nelson* v. *Massachusetts Port Authy.*, 55 Mass. App. Ct. 433, 435 (2002). These elements require that Delaney, if she is to prevail on her claim, prove that Reynolds was negligent and that his negligence was a proximate cause of her injury.

As explained, "negligent conduct is the proximate cause of an injury . . . [if] the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct." *Kent* v. *Commonwealth*, 437 Mass. 312, 320 (2002). See *Lane* v. *Atlantic Works*, 111 Mass. 136, 139-140 (1872); *Heng Or* v. *Edwards*,

62 Mass. App. Ct. 475, 484-485 (2004). A result is foreseeable if it was not highly extraordinary. See *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 193 (1982); *Heng Or* v. *Edwards*, 62 Mass. App. Ct. at 485-486. See also Restatement (Second) of Torts § 435 & comment b (1965).

This formulation is not altered when the original negligent act is followed by an independent act or event that actively operates in bringing about a plaintiff's injury, that is, a so-called intervening cause. Where the intervening occurrence was foreseeable by a defendant, the causal chain of events remains intact and the original negligence remains a proximate cause of a plaintiff's injury. See *Sarna* v. *American Bosch Magneto Corp.*, 290 Mass. 340, 343-344 (1935); *Roberts* v. *Southwick*, 415 Mass. 465, 473-474 (1993); *Poskus* v. *Lombardo's of Randolph, Inc.*, 423 Mass. 637, 639-640 (1996). Where, however, the intervening event was of a type so extraordinary that it could not reasonably have been foreseen, that new event is deemed to be the proximate cause of the injury and relieves a defendant of liability. See *Rae* v. *Air-Speed, Inc.*, 386 Mass. at 193. See also Prosser & Keeton, Torts § 44, at 312 (5th ed. 1984).

These cases and authorities lead to the question whether, as matter of law, suicide is such an extraordinary event as not to be reasonably foreseeable. To date, reported decisions in which a defendant's antecedent negligence has been considered as a legal cause of a plaintiff's death by suicide have eschewed specific discussion of the foreseeability of suicide as a break in the chain of causation. Rather, it appears to be the historical view that a purposeful act of suicide, rather than any antecedent negligence, will be deemed the legal cause of a decedent's injury unless the defendant's negligence rendered the decedent unable to appreciate the self-destructive nature of the suicidal act or, even if able to appreciate the nature of the act, unable to resist the suicidal impulse. See *Daniels* v. *New York, N.H. & H.R.R.*, 183 Mass. 393, 399-400 (1903); *Freyermuth* v. *Lutfy*, 376 Mass. 612, 619-620 (1978).[1]

Other jurisdictions have more recently gone beyond the

---

[1]Cases from other jurisdictions discussing the policies underlying this traditional rule cite to (1) the historic notion that suicide is an immoral or culpable act, see *Logarta* v. *Gustafson*, 998 F. Supp. 998, 1002-1003 (E.D. Wis.

traditional and often categorical basis for treating suicide as an intervening and superseding cause of injury and have considered various nontraditional circumstances as relevant to the issue of foreseeability.[2] A review of these cases as well as our more recent holdings reveals that we have not limited our analysis of like cases to an ironclad rule, subject to the limited exceptions set out in *Daniels* and *Freyermuth, supra,* that suicide or an intentionally self-inflicted injury constitutes an intervening and superseding cause as matter of law. See, e.g., *Nelson* v. *Massachusetts Port Authy.*, 55 Mass. App. Ct. at 436 (court "decline[d] to impute to the defendant a greater duty than currently exists" because "Massport neither caused the decedent's uncontrollable suicidal impulse nor had custody of the decedent and knowledge of her suicidal ideation" when she jumped to her death from bridge); *Carney* v. *Tranfaglia*, 57 Mass. App. Ct. 664, 669-670 (2003) (suggesting but not deciding that suicidal act might not break chain of causation).

Against this backdrop of the state of the law concerning a defendant's civil liability for a plaintiff's self-inflicted injury or death, we take up Delaney's arguments on appeal from the ruling granting Reynolds's motion for summary judgment. "The standard of review of a grant of summary judgment is whether,

1998); *Clift* v. *Narragansett Television, L.P.*, 688 A.2d 805, 807-808 (R.I. 1996); (2) the reluctance to impose a duty to protect others from harm, see *Logarta* v. *Gustafson*, 998 F. Supp. at 1001-1002; (3) the inordinate burden of being one's brother's keeper and the too-great magnitude of imposing a burden to foresee and prevent a suicide, see *Chaloub* v. *Dixon*, 338 Ill. App. 3d 535, 539 (2003); or (4) the unforeseeability of an intentionally self-destructive act, see *Wyke* v. *Polk County Sch. Bd.*, 129 F.3d 560, 574 (11th Cir. 1997); *Clift* v. *Narragansett Television, L.P.*, 688 A.2d at 808. See also Annot., Civil Liability for Death by Suicide, 11 A.L.R.2d 751, 757 (1950).

[2]See *Wyke* v. *Polk County Sch. Bd.*, 129 F.3d at 574-575 (school's failure to notify parent that child had twice attempted suicide on school property might be considered as special supervisory relationship); *Knight* v. *Wal-Mart Stores, Inc.*, 889 F. Supp. 1532, 1541-1543 (S.D. Ga. 1995); *Logarta* v. *Gustafson*, 998 F. Supp. at 1006; *Davis* v. *Cox*, 131 Ga. App. 611, 613 (1974) (foreseeability of risk determinative where defendant failed to secure loaded pistol against use by senile plaintiff who, while in defendant's care, shot himself by accident or design); *Scoggins* v. *Wal-Mart Stores, Inc.*, 560 N.W.2d 564, 567-568, 570 (Iowa 1997) (defendant's liability for acts of supplying deceased with instrumentality of suicide in violation of statute); *Runyon* v. *Reid*, 510 P.2d 943, 949-950 (Okla. 1973). See also Annot., Civil Liability for Death by Suicide, 11 A.L.R.2d 751, 757 (1950 & Supp. 1997).

viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989); *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

3. *Discussion.* In concluding that Delaney's undisputed act of using Reynolds's gun to inflict harm upon herself was the intervening and superseding cause of her injuries as matter of law, the judge relied on *Freyermuth, supra.* Delaney's arguments on appeal are based on the premise that a "deliberate purpose" to harm oneself is the hallmark of a suicidal act and an essential prerequisite to bringing her action within the reasoning of *Daniels*, 183 Mass. at 400, and its progeny. She contends that the materials submitted on the motion for summary judgment and the inferences favorable to her show that she committed this act in the belief that the gun was unloaded, that she did not intend to harm herself, that her state of mind was a question of fact and, consequently, that the judge erred in concluding that *Freyermuth* disposed of her claim against Reynolds. We agree.

It is undisputed that when Delaney aimed at a window and twice pulled the trigger to Reynolds's gun, the weapon failed to discharge bullets and that only thereafter did she turn the gun on herself. She claims that she did so in the belief that the gun was not loaded. Based upon these facts and the inferences that can be drawn therefrom in favor of Delaney, we conclude that whether her act was intended to cause serious injury or death turns on the question of her intention at the time she pointed Reynolds's weapon to her chin and pulled the trigger. See *White* v. *Seekonk*, 23 Mass. App. Ct. 139, 141 (1986) ("[s]ummary judgment is especially disfavored where [as here] knowledge or state of mind is at issue").

The judge's conclusion — that Delaney's act was an intervening superseding cause of her injuries — made irrelevant any consideration whether Reynolds might have been negligent in the first instance by leaving a loaded gun not equipped with a trigger lock accessible to Delaney, whom he knew or should have known to be suffering from substance abuse problems,

depression, and thoughts of suicide. "The question whether the risk of injury was foreseeable is almost always one of fact." *Moose* v. *Massachusetts Inst. of Technology*, 43 Mass. App. Ct. 420, 425 (1997). See *Christopher* v. *Father's Huddle Café, Inc.*, 57 Mass. App. Ct. 217, 225-226 (2003), and cases therein cited.

Even were the jury to find that Delaney intended to commit suicide when she turned Reynolds's gun on herself with an intentional suicidal or self-injurious purpose, we think it should also be open to Delaney to show and the jury to find that the risk that she would handle or use Reynolds's gun in a manner so as to cause intentional injury to herself was foreseeable and that his failure to secure his gun was a proximate cause of her injury. See *Sarna* v. *American Bosch Magneto Corp.*, 290 Mass. at 343-344 (jury could properly find causation where decedent's act of meddling with tank containing poisonous gas could be expected when defendant abandoned tank in location where people came to salvage metal). See also *Roberts* v. *Southwick*, 415 Mass. at 473-474; *O'Hanley* v. *Ninety-Nine, Inc.*, 12 Mass. App. Ct. 64, 68-69 (1981). See generally Restatement (Second) of Torts § 435(1) & comment b. Compare *Weeks* v. *Calnan*, 39 Mass. App. Ct. 933, 934 (1995) (chain of causation broken because plaintiff's decision to move furniture in unsafe manner was unforeseeable).

Further, and based upon whatever evidence might be presented at trial, a jury might find that although Delaney did not intend to kill or injure herself, her use of the gun in the manner that she did was far more negligent than any act on Reynolds's part. See G. L. c. 231, § 85.

At trial on remand, these questions of fact and the present law regarding intentionally inflicted injuries could well lead a trial judge to decide to formulate special questions pursuant to Mass.R.Civ.P. 49(b), 365 Mass. 813 (1974), for purposes of assistance on any postjudgment motions likely to be brought by either Delaney or Reynolds.

*Judgment reversed.*