MARY ZINCK[1] & another[2] *vs.* GATEWAY COUNTRY STORE, INC.,
& another[3] (and a companion case[4]).

No. 07-P-963.

Essex. May 15, 2008. - September 11, 2008.

Present: McHUGH, DREBEN, & MILLS, JJ.

*Evidence,* Declaration against interest. *Negligence,* Alcoholic liquors, Sale of
liquor, Proximate cause. *Alcoholic Liquors,* Sale to minor. *Proximate
Cause.*

In a civil action arising out of claims that the defendant negligently sold
alcohol to an underage person and that this sale proximately caused serious
injuries and death, the judge did not err in ruling that certain statements
were admissible as declarations against penal interest, where the declarants
were no longer domiciled in Massachusetts and were therefore unavailable
to testify; where the statements (in which the declarants, who were under-
age, admitted to purchasing alcohol) were against their penal interests;
where the judge redacted those portions of the statements that did not
properly qualify as declarations against interest; and where testimony by a
police detective provided sufficient corroboration of the statements.
[573-576]
At the trial of a civil action for injuries suffered by the plaintiffs as the result
of an automobile accident, there was ample evidence to support the jury's
findings that the defendant breached its duty to the plaintiffs by negligently
selling alcohol to a minor [576-578], and that the accident, which was
caused by a second minor with whom the first minor had shared the alcohol,
was a foreseeable consequence of the sale [578-579].

CIVIL ACTIONS commenced in the Superior Court Department
on February 10 and 11, 2003.

After consolidation, the cases were tried before *Howard J.
Whitehead,* J., and motions for a new trial and for judgment
notwithstanding the verdict were heard by him.

[1]Individually and as administratrix of the estate of Trista Zinck.
[2]David Zinck.
[3]William E. White.
[4]Neil Bornstein, a minor, & others *vs.* Gateway Country Store of N.H., Inc.,
& another.

*Richard J. Fallon* (*Stephen P. Colella* with him) for Gateway Country Store, Inc.

*Paul F. Denver* for Mary Zinck & another.

*Annette M. Gonthier-Kiely* for Neil Bornstein & others.

MILLS, J. A jury returned verdicts for the plaintiffs on their claims that the defendant, Gateway Country Store, Inc. (Gateway), negligently sold alcohol to an underage person and that this sale proximately caused Trista Zinck's death and Neil Bornstein's severe injuries.[5] Posttrial motions for new trial and judgment notwithstanding the verdict were also denied. Gateway now claims that (1) certain statements made to police were improperly admitted under the statements against penal interest hearsay exception; (2) the evidence was insufficient to support the jury's finding that Gateway negligently sold alcohol to an underage person; and (3) even assuming the sale, it was not the proximate cause of the accident. We affirm.

*Factual background.* "[I]n reviewing the denial of the defendant['s] motions for directed verdict and judgment notwithstanding the verdict, we will construe the evidence most favorably to the plaintiff[s] and disregard that favorable to the defendant." *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 326 (1982).

On January 7, 2003, Brendan Kneram, William White, Kory Delehanty, and Jeffrey Argonish gathered at Kneram's home while his parents were away. Because Kneram had a false New Jersey identification card (a driver's license), the others each gave Kneram five dollars to purchase beer. Kneram drove to Gateway, located in New Hampshire. Delehanty rode with him and waited while Kneram, who had purchased alcohol at Gateway before, went into the store and purchased a "30-pack" of Busch beer with the pooled money.

Kneram and Delehanty returned to Kneram's home at approximately 4:30 P.M., where White consumed, in the span of a little more than an hour, between seven to ten cans of the Busch beer and a full bottle of wine he had found in the home.

---

[5]William White was also found civilly liable, and the jury awarded damages to the plaintiffs. Brendan Kneram was dismissed as a defendant in this matter after separate judgment was entered against him.

The judge denied Gateway's motion for directed verdict made at the close of the plaintiffs' case and renewed after the defendants had rested.

Around 6 P.M., the group cleaned the house and placed the empty beer cans, as well as the empty 30-pack carton, in White's sport utility vehicle. Despite being visibly intoxicated, White then drove from Kneram's home to meet some friends. While en route, White struck pedestrians Zinck and Bornstein, killing the former and severely injuring the latter. White fled but was later apprehended by police.

Eight days later, Kneram, accompanied by counsel, went to the Newburyport police station and gave a statement admitting that he purchased the beer at Gateway. Delehanty also made a statement to the police that he had accompanied Kneram to Gateway.

In the course of investigating the accident, the police questioned two employees who were working at Gateway on the evening Kneram purchased the beer. One told police that she might have sold a 30-pack of Busch beer, but to a regular customer between the age of fifty to fifty-five years. She claimed that she did not recall being presented with a New Jersey driver's license during the evening. The other employee told police that his coworker did ask him the price of a 30-pack of Busch beer, but that the customer was an older person.

Detective Brian Bruneault of the Newburyport police department, who took the statements of Kneram and Delehanty, spoke to the owner of Gateway about examining the register receipts for a record of Kneram's beer purchase. The owner and another woman went to an upstairs office to look through the receipts, while the detective stood near the office door. As they were reviewing the receipts, the owner told the woman, "If you find them, don't say anything." After reviewing the receipts, the owner told police that there was no purchase record for a 30-pack of Busch beer. The detective did not ask for the receipts or for them to be saved. The owner destroyed the receipts.

*Discussion.* 1. *Declaration against interest.*[6] During trial,

---

[6]The parties focus on the statements as against the declarants' *penal* interests. We note, without deciding, that the statements could be viewed as against their *pecuniary* interests, given the reasonable expectation that the statements, at the time they were made, could be used in future civil litigation resulting in monetary damages against them. See Young, Pollets, & Poreda, Evidence § 808.4 (2d ed. 1998).

Detective Bruneault was allowed to read into evidence the written statements of Delehanty and Kneram, in redacted form, as statements against penal interest. The judge found that both Kneram and Delehanty were no longer domiciled in Massachusetts, as Kneram was an out-of-State student and resident and Delehanty was serving in the United States military overseas. Additionally, Kneram, both through his attorney and by affidavit, stated that he would, if called, refuse to testify and invoke his privilege under the Fifth Amendment to the United States Constitution.

As a hearsay exception, a statement is admissible as a declaration against penal interest if (1) the declarant is unavailable; (2) "the statement . . . so far tend[s] to subject the declarant to criminal liability 'that a reasonable man in his position would not have made the statement unless he believed it to be true' "; and (3) the statement, "if offered to exculpate the accused, [is] corroborated by circumstances clearly indicating its trustworthiness." *Commonwealth* v. *Lopera*, 42 Mass. App. Ct. 133, 135-136 (1997), quoting from *Commonwealth* v. *Drew*, 397 Mass. 65, 73 (1986). This rule encompasses not only "direct admission[s] of guilt" but also "disserving statements by a declarant that would have probative value in a trial against the declarant." *Commonwealth* v. *Fiore*, 53 Mass. App. Ct. 785, 791 (2002), quoting from *Commonwealth* v. *Drew*, *supra* at 73.

Since *Commonwealth* v. *Carr*, 373 Mass. 617 (1977), Massachusetts courts have frequently considered the application of this hearsay exception in criminal cases. See, e.g., *Commonwealth* v. *Drew*, 397 Mass. at 75-76 (admissibility of statement determined by whether there is some reasonable likelihood that statement could be true, rather than whether it actually is true); *Commonwealth* v. *Pope*, 397 Mass. 275, 278-281 (1986); *Commonwealth* v. *Morgan*, 449 Mass. 343, 353-357 (2007); *Commonwealth* v. *Alicia*, 6 Mass. App. Ct. 904, 905 (1978).

In contrast, however, our courts have addressed the use of the hearsay exception in civil cases on a limited basis. In *Atlas Metals Prod. Co.* v. *Lumbermans Mut. Cas. Co.*, 63 Mass. App. Ct. 738, 746 n.8 (2005), the court, citing a criminal case, *Commonwealth* v. *Drew*, *supra* at 73, applied the hearsay exception and stated in a footnote that an employee's statement was prop-

erly admitted as a declaration against her penal interest. In *Flood* v. *Southland Corp.*, 416 Mass. 62 (1993), the court refused to apply the exception because the declarant was available. *Id.* at 69 n.9. Similarly, in *Fire Commr. of Boston* v. *Joseph*, 23 Mass. App. Ct. 76 (1986), the court noted that the statements lacked the necessary corroboration to be admitted. *Id.* at 80 n.5. See *Kettenbach* v. *Demoulas*, 901 F. Supp. 486, 500 n.14 (D. Mass. 1995).

Here, the judge was correct in ruling that the facts supported application of the "statements against interest" hearsay exception. The judge concluded, after an extensive voir dire, that the declarants were unavailable[7] and that the statements were sufficiently against their penal interests such that "reasonable m[e]n in [their] position would not have made the statement[s] unless [they] believed it to be true." *Lopera*, *supra* at 135, quoting from *Commonwealth* v. *Drew*, *supra*. The judge's careful attention is further evidenced by the extent of hearing and arguments, as well as his careful redaction of those portions of the statements which, in his view, did not properly fall within the hearsay exception. See *Commonwealth* v. *Marrero*, 60 Mass. App. Ct. 225, 228-231 (2003) (entire statement to police properly not admitted where only portion of statement was actually against declarant's penal interest and that portion was not relevant to "matters at hand in the trial").

As stated above, we have implied that corroboration of inculpatory statements is required in civil matters. *Fire Commr. of Boston* v. *Joseph*, *supra* ("[G]iven the hearings officer's conclusions concerning a lack of evidence to corroborate any of the hearsay presented, . . . it is unlikely that he would have admitted the statement as one against penal interest"). For purposes of this case, we will also assume, without deciding, that the cor-

---

[7]*Commonwealth* v. *Lopera*, relied upon by Gateway, is distinguishable. In that case, we stated that "judges should not be quick off the mark [to declare someone unavailable by] presuming that an absent witness may invoke his or her privilege against self-incrimination. The possibility that an absent witness may exercise his or her privilege is not the same as a witness actually exercising the privilege." (Citation omitted.) 42 Mass. App. Ct. at 137 n.3. Here, however, the judge did not declare Kneram "unavailable" by unilaterally assuming that he would assert his Fifth Amendment right, as in *Lopera*. Instead, the judge's determination was based on the declarant's own affidavit and his attorney's representation.

roboration requirement applies to the statements. In determining whether there is sufficient corroboration, a judge should "assess the credibility of the declarant . . . and . . . admit a statement if 'there is some reasonable likelihood that the statement could be true.' " *Commonwealth* v. *Weichell*, 446 Mass. 785, 803 (2006), quoting from *Commonwealth* v. *Galloway*, 404 Mass. 204, 208 (1989). "If the issue of sufficiency of . . . corroboration is close, the judge should favor admitting the statement" and rely on "the good sense of the jury [to] correct any prejudicial impact." *Commonwealth* v. *Drew, supra* at 75 n.10.

There was sufficient corroboration of the statements in this case. First, Detective Bruneault testified that he tracked the lot number on the beer carton (purchased by Kneram and found in White's car) to a shipment of cases sent to southern New Hampshire, where Gateway is located. More convincingly, Detective Bruneault also testified that the lot number matched those on other 30-packs in the Gateway store. We conclude that this evidence alone is sufficient to corroborate Kneram's and Delehanty's statements that Kneram purchased the beer at Gateway.

For these reasons, the judge correctly ruled the statements admissible.

2. *Negligence.* To be liable for negligent conduct, it must be shown that the defendant breached a duty of care that it owed to the plaintiffs, resulting in harm causally related to this breach.[8] See *Tobin* v. *Norwood Country Club, Inc.*, 422 Mass. 126, 141 (1996); *Christopher* v. *Father's Huddle Café, Inc.*, 57 Mass. App. Ct. 217, 219 (2003).

In addition to the common-law duty to "exercise reasonable care to avoid physical harm to others," *Jupin* v. *Kask*, 447 Mass. 141, 147 (2006), suppliers of alcohol owe a duty of care to the public, which may be violated by selling alcohol to an

---

[8]Statutes in both Massachusetts and New Hampshire prohibit the sale of alcohol to persons under the age of twenty-one. See G. L. c. 138, § 34; N.H. Rev. Stat. Ann. § 179:5 (2002). Violations of these statutes carry criminal penalties, but do not explicitly grant an independent ground for negligent liability. See *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. 271, 275 (1970); *Bennett* v. *Eagle Brook Country Store, Inc.*, 408 Mass. 355, 358 (1990); *Hickingbotham* v. *Burke*, 140 N.H. 28 (1995). Therefore, liability for negligence must be grounded in the common law. See *Cimino* v. *Milford Keg, Inc.*, 385 Mass. at 326; *Bennett* v. *Eagle Brook Country Store, Inc., supra.*

individual who "the establishment knew or reasonably should have known" was under the age of twenty-one. *Christopher* v. *Father's Huddle Café, Inc., supra* at 224. See *Tobin* v. *Norwood Country Club, Inc., supra* at 133, 135 (this duty is based on belief that vendor of alcohol is in best position to mitigate risks associated with sale of alcohol to minors).

Gateway does not challenge that, as a supplier of alcohol, it owed a duty to plaintiffs Zinck and Bornstein; instead, it argues that there was insufficient evidence to support the jury's finding that Gateway breached its duty by negligently selling alcohol to the underage Kneram. Additionally, Gateway claims that even assuming the sale did occur, Zinck's death and Bornstein's injuries were not reasonably foreseeable consequences. We disagree.

a. *Evidence of negligence.* While evidence of a sale of alcohol to a minor in violation of a statute does not, standing alone, establish a prima facie case of negligence, see *Cimino* v. *Milford Keg, Inc.*, 385 Mass. at 327-328, evidence of such a sale can be used to support a finding of negligence. See *Michnik-Zilberman* v. *Gordon's Liquor, Inc.*, 390 Mass. 6, 10 (1983) (sale of alcohol to underage person is "critical" to finding of negligence).

Here, there was sufficient evidence for the jury to find that Gateway breached its duty by selling alcohol to Kneram. The jury could believe from Kneram and Delehanty's statements to the police that Kneram purchased beer at Gateway using false identification on the night of the accident. Also, as the judge properly instructed, the jury were allowed to infer that the destroyed register tapes from the day of the purchase were adverse to Gateway's interests. *Fletcher* v. *Dorchester Mut. Ins. Co.*, 437 Mass. 544, 550 (2002). *Westover* v. *Leiserv, Inc.*, 64 Mass. App. Ct. 109, 113 (2005).

Additionally, there was sufficient evidence from which the jury could infer that Gateway failed to ask Kneram for his identification. The Gateway employee working on the night of the incident testified, after being shown a photograph of Kneram, that someone with his "youthful" appearance should have been asked for his identification. However, the same employee testified that she had no memory of seeing a New Jersey identification on the night of the incident. From this the jury could

properly find that Kneram was not asked to produce identification even though the Gateway employee knew or reasonably should have known that Kneram was underage. For these reasons, there was ample evidence to support the jury's finding that Gateway negligently sold beer to Kneram.

b. *Causation.* Gateway argues that, even assuming it negligently sold alcohol to Kneram, the accident was not a foreseeable consequence of the sale, claiming that Kneram's service of alcohol to other minors was an intervening act, severing the causal connection between the sale and an accident resulting in harm to third persons.

"[N]egligent conduct is the proximate cause of an injury . . . [if] the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct." *Delaney* v. *Reynolds,* 63 Mass. App. Ct. 239, 241 (2005), quoting from *Kent* v. *Commonwealth,* 437 Mass. 312, 320 (2002). The test for whether an intervening act breaks the chain of causation is the foreseeability of that act. *Irwin* v. *Ware,* 392 Mass. 745, 762 (1984) ("[T]he foreseeability of the harm [is] the 'most crucial factor' in justifying liability"). A "defendant is responsible for the harms caused in substantial degree by the negligent act, except any so highly extraordinary that the defendant could not ex ante have reasonably foreseen that the negligent act would bring them about." *Heng Or* v. *Edwards,* 62 Mass. App. Ct. 475, 486 (2004). "Where the intervening occurrence was foreseeable by a defendant, the causal chain of events remains intact and the original negligence remains a proximate cause . . . ." *Delaney* v. *Reynolds, supra* at 242. There are, however, "limits to the scope or definition of reasonable foreseeability based on considerations of policy and pragmatic judgment." *Poskus* v. *Lombardo's of Randolph, Inc.,* 423 Mass. 637, 640 (1996).

In *Michnik-Zilberman* v. *Gordon's Liquor, Inc.,* 390 Mass. 6 (1983), the court held that a liquor store was negligently liable for injuries caused by an intoxicated minor to whom the store sold alcohol, noting that the vendor need not have foreseen the particular kind of harm that might occur from its negligent sale. Here, in contrast, White, the intoxicated minor who caused the accident, was not the minor to whom Gateway sold the alcohol.

"[Q]uestions of proximate and intervening cause are left to

the jury for its factual determination." *Id.* at 12, quoting from *Rappaport* v. *Nichols*, 31 N.J. 188, 203 (1959). See Restatement (Second) of Torts § 453 comment b (1965) (if "there is room for reasonable difference of opinion as to whether an act was negligent or foreseeable, the question should be left to the jury"). On the facts of this case, we conclude that the judge properly placed before the jury the question whether the accident was the foreseeable result of Gateway's negligent sale of beer to Kneram.[9] See *Glick* v. *Prince Italian Foods of Saugus, Inc.*, 25 Mass. App. Ct. 901, 902 (1987) (issue of foreseeability will only be determined as matter of law if "no rational view of the evidence would warrant a finding of negligence"). It is not outside the scope of foreseeability that a minor purchaser would share such a quantity of beer with other minors and that one of these minors would drive while intoxicated. See *Watts* v. *K, S, & H*, 957 S.W.2d 233, 239 (Ky. 1997) ("[W]e think it is not clearly unforeseeable that a member of a group of underage boys, who purchased a case of beer and a pint of rum on a school morning, would share his purchase with his companions and that one or more of those companions would drive that or another automobile, causing a disastrous collision"). This result is consistent with "considerations of policy and pragmatic judgment" proscribing the sale of alcohol to underage persons. *Poskus* v. *Lombardo's of Randolph, Inc.*, *supra.*

*Judgments affirmed.*

---

[9]The judge twice instructed the jury that the plaintiffs have to prove that "the accident and injuries were foreseeable to a reasonable person in the position of Gateway. And by that I mean that they were a natural, probable and predictable consequence of the negligence. It's not necessary that the precise manner in which the injuries were sustained be foreseeable; it is sufficient if one could reasonably foresee that the negligent conduct might cause injuries in substantially the manner in which they actually did occur here. That is to say that the accident and harm which [Trista Zinck and Neil Bornstein] sustained was in that general class of harm which one could reasonably expect to occur, to result, from the negligent actions of Gateway."