Billings, Thomas P., J.
This is a negligence action arising out of an altercation between the plaintiff, Dustin Travaglia and three of the defendants, Craig Femia, John Dell’Anno, and Brian Gird, that occurred in the early morning hours of December 30th, 2006 in Lowell, Massachusetts. Travaglia alleges that defendant Kandon, Inc. d/b/a The Old Court (‘The Old Court”) was negligent because it served alcoholic beverages to its under-aged and intoxicated patrons, and, as a result of that negligence, Travaglia suffered injuries. This matter is before the court on the Old Court’s motion for summary judgment under Mass.R.Civ.P. 56. For the reasons stated below, the motion is DENIED.
FACTS
The facts pertaining to issues of proximate cause and foreseeability (resolving any disputes and drawing all permitted inferences in Travaglia’s favor) are as follows. On December 29th, 2006, Travaglia and two of his friends, Brian Gervais and Anthony Marinaro, arrived at The Old Court between 9:00 pm and 10:00 pm. The Old Court is located at 21 Central Street, Lowell, at the intersection with Middle Street.
Both Gervais and Marinaro were under the age of 21. Marinaro recognized the Old Court’s doorman as a fellow employee of the Middlesex Sheriffs department, and used his Middlesex Sheriffs ID to gain access to the bar. During their stay at the Old Court, the group consumed two to three beers each.
While at the Old Court, Marinaro recognized Femia, who also worked at the Middlesex Deputy Sheriffs department. Femia was at the Old Court with his friends, Gird and Dell’Anno. Prior to arriving at the Old Court between 9:00 pm and 9:30 pm, the three men had been drinking a short block away at another local establishment, Hookslide Kelly’s, at 19 Merrimack Street.[2] At the Old Court, Femia consumed eight beers, Gird consumed six, and Dell’Anno had between ten and twelve beers and four shots, leaving him “the drunkest I’ve ever been.”[3]
Femia, Gird and Dell’Anno stayed at the Old Court until about 1:30 am. Aside from saying hello upon entering the bar, they had limited interaction with Travaglia’s group while at the Old Court.
Travaglia and his companions left the Old Court between 11:00 pm and midnight and went to Hooksl-ide Kelly’s, where they stayed till approximately 1:30 am. Marinaro, at least, drank enough there to become intoxicated. As the three were walking up Middle Street on the way back to their car, they encountered Femia, Gird and Dell’Anno who were also walking towards their car. They were about half a long block from the Old Court. At that point, the intoxicated Marinaro yelled to Femia and his companions, “Isn’t it past your bedtime?” This prompted a verbal altercation between the two groups, which soon turned physical. During the fight, Femia punched Gervais, who fell to the ground unconscious; Marinaro also was punched. Femia, Gird and Dell’Anno fled.
Travaglia and Marinaro helped Gervais to their car. A couple of minutes later they again encountered Femia, Gird and Dell’Anno, this time on Palmer Street (from the Old Court, a long block down Middle Street to the intersection with Palmer, then most of a short block to the right (north) on Palmer). This resulted in another violent altercation, as a result of which Travaglia suffered an orbital fracture and a broken nose. He was taken by ambulance to Lowell General Hospital and, due to the severity of his injuries, was airlifted to Brigham and Women’s Hospital.
DISCUSSION
Travaglia alleges that the Old Court was negligent because it over-served alcoholic beverages to Femia, Gird, and Dell’Anno, as well as serving Travaglia’s under-aged friends (especially Marinaro, whose injudicious commentary on the ages of the other group triggered the first fight), and that the Old Court’s negligence caused Travaglia’s injuries. The Old Court *390 concedes that there are genuine issues of material fact as to whether it knew or should have known, when it served alcohol to them, that Marinaro and Gervais were under age, and that Femia, Gird and Dell’Anno were intoxicated. It argues, however, that it owed no duty of reasonable care to Travaglia to protect him from the assault by its intoxicated patrons occurring away from the premises. Additionally, the Old Court maintains that, even if there was negligence, proximate cause is lacking because the altercation between the two groups and Travaglia’s injuries fall outside the scope of foreseeable risk.
Any commercial server of alcohol has both a regu-latoiy obligation and, in appropriate cases, a duty in tort not to serve a patron whom it knows or should know to be intoxicated, McGuiggan v. New England Tel. & Tel. Co., 398 Mass. 152, 162 (1986), or underage. Tobin v. Norwood Country Club, Inc., 422 Mass. 126, 136 (1996). Violation of either duty may result in liability to someone injured in a motor vehicle accident caused by an alcohol-impaired driver, see Cimino v. Milford Keg, Inc., 385 Mass. 323 (1982), and Zinck v. Gateway Country Store, Inc., 72 Mass.App.Ct. 571 (2008), or in an altercation caused by an alcohol-fueled aggressor, see Carey v. New Yorker of Worcester, Inc., 355 Mass. 450, 451 (1969), and Christopher v. Father’s Huddle Café, Inc., 57 Mass.App.Ct. 217, 224 (2003), or even by the trajectory of a drunk falling off a bar stool, Sweenor v. 162 State Street, Inc., 361 Mass. 524 (1972).
“When the bar has served a potentially dangerous person, the duty may extend beyond the premises.” O’Gorman v. Antonio Rubinaccio & Sons, 408 Mass. 758, 761 n.2 (1990). Surprisingly, however, no reported Massachusetts case addresses precisely the issue presented here: a server’s liability for a patron’s violence in an altercation that began and ended after the participants had left the premises. Rather, Massachusetts dram shop cases have generally fallen into one of two categories: the drunken patron who assaults another patron on the premises, or who is involved in a motor vehicle accident after leaving. See Westerback v. Harold F. LeClair Co., 50 Mass.App.Ct. 144 (2000), and cases cited.
The case coming closest to this one on its facts—but still distinguishable—is Christopher v. Father’s Huddle Café, supra. There, a dispute began among patrons inside the bar and became physical outside, on a street comer 50 yards away but in view of the doorman. He had seen signs of hostility between the rival groups while still in the bar and anticipated trouble, but did nothing. Eventually the plaintiffs decedent, outnumbered by and fleeing from underage patrons whom the bar had served, ran into the street and was struck by a car. Noting that “the duty to protect patrons extends to all reasonably foreseeable harm including, in some circumstances, harm that occurs at a distance from the premises,” the court held that the doorman’s observations of the antagonists’ interactions, both inside the bar and outside but nearby, “triggered a duty ... to take reasonable steps to prevent foreseeable harm by calling police.”
The plaintiff in the likewise distinguishable Westerback case fared less well. After leaving the bar in impaired state, she was sexually assaulted by strangers who had stopped to give her a ride. The court acknowledged the on-premises assault and off-premises motor vehicle accident cases, as well as numerous others imposing liability on various kinds of establishments whose failure to provide adequate security resulted in harm to
a patron or his property . . . while on or just off the premises of the proprietor ... , in circumstances where the nature or condition of the premises called for security to ward off foreseeable criminal activity.
50 Mass.App.Ct. at 147. The court felt, however, that the facts in the case before it differed significantly from any of these precedents.
There is nothing in the evidence in this case to suggest that the rape of the plaintiff by a predator was reasonably foreseeable, unless one can draw the inference, simply from the general vulnerability of drunks, that they will likely be targeted by criminals—perhaps muggers or, as here, a rapist. A real difficulty with permitting a jury to draw such an inference is that most persons who drink alcoholic beverages are, to some extent, temporarily impaired, if only slightly; the question of how impaired would inevitably be one for the jury; and owners and managers of taverns and licensed restaurants and clubs would in effect become the insurers of their patrons against criminal attacks. “There must be limits to the scope or definition of reasonable foreseeability based on considerations of policy and pragmatic judgment.”
Id. at 148 (citations omitted). Summary judgment for the bar owner was therefore affirmed.[4]
The present case, of course, bears marked differences from both Christopher and Westerback. Unlike Christopher, there was no perceptible display of aggression or hostility inside the establishment or within the view of its employees, so as to trigger a duty to summon law enforcement as the rival groups were leaving to “take it outside.” Nor, as in Westerback, was this a case of a patron, vulnerable because inebriated, being assaulted by persons with no relationship to her or to the bar.
In the absence of closely-fitting appellate precedent, I hold that the claim here presents a juiy question. The foreseeability issue is better conceived as a jury question on proximate cause than as a purely legal question of duty. Usually, “questions of proximate and intervening cause are left to the jury for its factual determination." Michnik-Zilberman v. Gordon’s Liquor, Inc., 390 Mass. 6, 12 (1983) (citation omitted). Simi *391 larly, “negligence questions involving issues of what is reasonably foreseeable are ordinarily left to the jury,” unless “no rational view of the evidence would warrant a finding of negligence.” Glick v. Prince Italian Foods of Saugus, Inc., 25 Mass.App.Ct. 901, 902 (1987).
A tavern’s duty to refuse further service to a visibly intoxicated patron is no longer debatable; nor are the risks to other patrons and to the general public when the duty is disregarded.
Serving hard liquor, particularly to one already drunk, has a consequence which is not open to successful dispute. Such action may well make the individual unreasonably aggressive, and enhance a condition in which it is foreseeable that almost any irrational act is foreseeable.
Carey v. New Yorker of Worcester, Inc., 355 Mass. at 453. Whatever the bracing effects of fresh December air, moreover, few would seriously contend that alcohol is instantly metabolized as the patron exits the establishment.
ORDER
For the foregoing reasons the defendant Tavern, Inc’s motion for summary judgment is DENIED.

Dell’Anno was drinking at the Old Court prior to going over to Hookslide Kelly’s. He consumed one to two beers over a period of approximately thirty minutes during that first visit to the Old Court. Gird and Dell’Anno arrived at Hookslide Kelly’s at 8:00 pm, and drank two or three beers there. Femia met up with them at Hookslide Kelly’s, and drank an undetermined amount of beer.

At the end of the evening, Dell’Anno expressed his appreciation with a $100 tip to the Old Court bartenders, who reciprocated with one last, free beer.

The Westerback court did not cite to Tobin v. Norwood Country Club, Inc., 422 Mass. 126, 136 (1996), in which an intoxicated and underage patron got into an argument with her boyfriend, left the premises, walked some distance, rebuffed a friend’s offer of a ride, and wandered into traffic, where she was struck and killed by a passing car. The club that had served her was held liable, albeit with little attention to the issue of proximate cause.