OPINION OF THE COURT
Walter M. Schackman, J.
Plaintiffs move for an order granting partial summary *886 judgment in the amount of $4,250,000 based on the partnership coverage contained in certain bonds issued by defendants.
Defendants cross-move for an order granting summary judgment dismissing the complaint.
Plaintiff Moore & Schley, Cameron & Co. (Moore & Schley) was a securities brokerage firm. Plaintiff Continental Bank, N. A. (Continental) is the assignee of Securities Settlement Corp. (SSC), which at all relevant times acted as Moore & Schley’s clearing broker pursuant to an agreement dated April 16, 1985 (the Clearing Agreement). Pursuant to the Clearing Agreement, SSC agreed to clear stock transactions initiated by Moore & Schley in exchange for certain compensation and an agreement by Moore & Schley to indemnify SSC for any losses incurred in behalf of Moore & Schley. Defendants Aetna and National Union provided fidelity bonds to Moore & Schley (the Bonds) insuring for losses stemming from dishonest or fraudulent acts of Moore & Schley’s employees. In August 1988, two brokers employed by Moore & Schley, Vincent Militano and Milton Sonneberg, implemented a scheme to corner the market in the publicly traded stock of Chase Medical Corporation (Chase Medical) by making unauthorized trades in customer accounts and by selling the stock from one customer to another (cross trades) without the customers’ knowledge. It was Militano and Sonneberg’s intention to raise the price of Chase Medical stock artificially in what has been characterized as a "war against the shorts” (short sellers, who were hoping that the stock price would go down). By the end of December 1988, the Chase Medical stock had risen from $5,375 in August to $13 per share, notwithstanding adverse performance reports, and Militano and Sonneberg had accumulated 113.3% of the public float. Their activity did not go unnoticed by the American Stock Exchange, which halted trading in Chase Medical stock in mid-January 1989. On January 25, 1989, the Securities and Exchange Commission (SEC) initiated a civil action against Militano and Sonneberg. At the time trading was halted, Moore & Schley, and consequently SSC as its clearing broker, held a large number of shares of Chase Medical that had not been paid for (almost all of which had been purchased on margin), which Moore & Schley’s customers disavowed (i.e., the customers refused to satisfy their outstanding account balances and margin calls because Militano and Sonneberg’s trading in their names had not been authorized). Moore & Schley lacked the financial ability to purchase the stock. As a *887 result, SSC, as the clearing broker, was forced to purchase 1,191,759 shares of Chase Medical stock (which turned out to be worthless) at a total cost of $11,305,911.
On February 7, 1989, SSC and Moore & Schley entered into an assignment of insurance proceeds agreement under which Moore & Schley assigned to SSC "all proceeds” of the Bonds relating to any claims arising out of activities pertaining to Chase Medical stock. On March 15, 1989, SSC and Moore & Schley entered a cross-indemnity agreement, which defendants claim released Moore & Schley from all liability related to the Chase Medical matter. On September 19, 1989, SSC assigned its rights to the proceeds of the Bonds to plaintiff Continental Bank.
On January 30, 1990, Moore & Schley filed a petition for reorganization under chapter 11 of the Bankruptcy Code. In March 1990, Moore & Schley submitted written proofs of loss to the defendants based upon the dishonest and fraudulent acts of Militano and Sonneberg. In March 1991, after waiving indictment, Militano pleaded guilty to conspiracy to commit securities fraud and making a false statement to a Federal official, and Sonneberg pleaded guilty to conspiracy to commit securities fraud. In April 1991, defendants disclaimed coverage. The SEC’s civil action against Militano and Sonneberg culminated in a judgment against them enjoining them from engaging in securities fraud and requiring them to disgorge their profits.
In June 1991, Moore & Schley’s chapter 11 reorganization was converted into a chapter 7 liquidation proceeding. At about the same time, plaintiffs commenced the underlying action to recover the Bonds proceeds.
Plaintiffs now seek partial summary judgment in the amount of $4,250,000. They also seek summary judgment dismissing all but three of defendants’ 11 affirmative defenses, although this request is not contained in their notice of motion. Plaintiffs’ core argument is that the actions of Militano and Sonneberg constituted "dishonest and fraudulent acts committed by an Employee” with the "manifest intent” to cause Moore & Schley to sustain a loss that is covered under the Bonds. Plaintiffs’ remaining arguments are directed at the affirmative defenses and are summarized herein as follows: the cross-indemnity agreement did not release Moore & Schley from the obligations under the Clearing Agreement and was not intended to benefit defendants; Moore & Schley’s *888 bankruptcy filing on January 30, 1990 does not affect defendants’ liability under the Bonds because the assignment of insurance proceeds agreement was executed a year earlier and the proceeds were no longer part of Moore & Schley’s estate; Militano and Sonneberg’s activities did not constitute transactions in customer accounts that would be excluded from coverage; Militano and Sonneberg’s activities did constitute conversion of securities in a customer’s account, which is covered; the misrepresentation exclusion does not apply because Militano and Sonneberg made no representations to Moore & Schley’s customers; the losses incurred by Moore & Schley were independent of the violation of any law or regulation; and this action is timely because the parties agreed that the effective date of its commencement would be deemed to be December 21, 1990.
Defendants have cross-moved for summary judgment. The court finds that the cross motion should be granted for several reasons.
Coverage was not triggered because Militano and Sonneberg did not display a manifest intent to cause a loss to Moore & Schley. The Bonds provide that defendants agree to indemnify Moore & Schley for: "(A) Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others [provided that] such dishonest or fraudulent acts must be committed by the Employee with the manifest intent: (a) to cause the insured to sustain such loss; and (b) to obtain financial benefit for the Employee and which, in fact, result in obtaining such benefit.”
The key words are manifest intent. "The manifest intent provision * * * limit[s] protection under th[e] bond to losses due to embezzlement or embezzlement-like acts.” (Glusband v Fittin Cunningham & Lauzon, 892 F2d 208, 212 [2d Cir 1989].) Militano and Sonneberg did not display a manifest intent to cause Moore & Schley to sustain a loss. They targeted the short sellers of Chase Medical stock, not Moore & Schley. The last thing they wanted was for their scheme to fail. As stated by plaintiffs in their memorandum, "[p]ersonal profit motivated the scheme of Militano and Sonneberg.” (Mem, at 9.) The manifest intent of these scoundrels was to make money, not to cause Moore & Schley to lose money. (Cf., Municipal Sec. v Insurance Co., 829 F2d 7, 9 [6th Cir 1987].)
Coverage was not triggered because Moore & Schley did not suffer a direct loss. Under the assignment of insurance pro *889 ceeds agreement, Moore & Schley assigned to SSC "all proceeds of the Bonds in respect of any claim or claims * * * [that] * * * arise out of * * * activities relating to the shares of common stock of Chase Medical Group, Inc.” The Bonds, which provide in pertinent part that "[t]he underwriter agrees to indemnify the insured for * * * (A) [l]oss resulting directly from dishonest or fraudulent acts committed by an Employee” insure against an actual loss. The fact "[t]hat the insured may be liable to a third party for a loss of money resulting from employee dishonesty does not transform a policy covering the insured against a direct loss into one indemnifying against liability” (175 E. 74th Corp. v Hartford Acc. & Indent. Co., 51 NY2d 585, 593; see also, 13 Couch, Insurance, Fidelity Guarantee Contracts, § 46.2, at 10; § 46.219, at 163; § 46.220, at 164 [2d ed]).
Coverage was not triggered because the loss resulted from transactions in a customer’s account. The Bonds provide in pertinent part that a "[l]oss resulting directly or indirectly from transactions in a customer’s account, whether authorized or unauthorized” is excluded from coverage. SSC’s (now Continental Bank’s) loss resulted from Militano and Sonneberg’s unauthorized transactions in the customer accounts of Moore & Schley. The conversion exception (it is arguable whether conversion occurred, although defendants appear to have the better argument) relied on by plaintiffs, viz., "except the unlawful withdrawal and conversion of * * * securities * * * directly from a customer’s account by an Employee provided such unlawful withdrawal and conversion is covered under insuring Agreement A” is not applicable herein because insuring agreement A, quoted above, requires that the employee have a "manifest intent” to cause the insured to sustain the loss, and the court has determined that no such intent was present here.
The parties have raised additional issues which will be briefly addressed. The release contained in the cross-indemnity agreement (§ 1) relied on by defendants is not dispositive. Although SSC released Moore & Schley from Chase Medical liabilities under the Clearing Agreement, the parties specifically required Moore & Schley to perform its obligations to SSC under the assignment of insurance proceeds agreement (§ 1 [e]). The court finds that both Continental Bank and Moore & Schley have standing. Continental Bank is SSC’s assignee. Moore & Schley has produced a letter from the bankruptcy trustee authorizing this action. The action is *890 timely. The remaining issues concerning an exclusion for indirect or consequential loss, the impact of violations of the securities laws, Moore & Schley’s awareness of Militano and Sonneberg’s activities and SSC’s participation in those activities either present factual questions or need not be addressed in order for the motions to be resolved.
Accordingly, plaintiffs’ motion is denied. Defendants’ cross motion is granted and the complaint is hereby dismissed. The clerk is directed to enter judgment accordingly, with costs and disbursements to defendants.
This constitutes the decision and order of the court.