738          63 Mass. App. Ct. 738 (2005)

Atlas Metals Products Co., Inc. *v.* Lumbermans Mutual Casualty Company.

## Atlas Metals Products Co., Inc. *vs.* Lumbermans Mutual Casualty Company.

No. 03-P-1531.

Worcester. August 16, 2004. - June 14, 2005.

Present: Laurence, Brown, & Berry, JJ.

*Insurance,* Employee dishonesty protection policy, Coverage, Construction of policy. *Contract,* Insurance.

In an action brought in Superior Court by a plaintiff insured seeking coverage, under an employee dishonesty protection policy (policy) issued by the defendant insurer, for thefts by the plaintiff's employee in a fraudulent scheme involving the cashing of checks from the checking account of an uninsured separate company, the judge correctly granted summary judgment in favor of the insurer, where the terms of the policy, which limited coverage to direct property losses of the insured and excluded both indirect losses and the payment of damages to third parties, could not be deemed to cover general legal liability for damages due to independent third-party entities [739-745]; and where, in any event, the plaintiff failed to establish, as required under the policy, that its employee had the "manifest intent" to cause the plaintiff (rather than the uninsured separate company) to sustain a loss when she misappropriated the funds [745-746].

Civil action commenced in the Superior Court Department on September 26, 2000.

The case was heard by *John S. McCann,* J., on motions for summary judgment.

*William T. Bogaert* for the defendant.

*Erin Bradbury* for the plaintiff.

Berry, J. Atlas Metals Products Co., Inc. (Atlas), appeals the grant of summary judgment to defendant Lumbermans Mutual Casualty Company (Lumbermans). The case involves a blanket employee dishonesty protection policy (EDP). The question presented is whether the EDP issued to Atlas, as the named insured, covered thefts by an Atlas employee in a fraudulent scheme involving the cashing of checks from a separate busi-

ness entity, R&R Realty Trust (R&R). Lumbermans denied the claim for the R&R thefts. Lumbermans paid a related claim for the misappropriation of Atlas funds by the same Atlas employee.

Having reviewed the record, we determine that there are no disputed material facts on the controlling issues and that, as matter of law, coverage under the EDP did not extend to the thefts from the independent business entity, R&R, the checking account of which was not the property of the insured, Atlas. Accordingly, summary judgment correctly entered.

1. *Background.* The summary judgment record reflects the following. Atlas submitted two claims to Lumbermans involving thefts by a former Atlas employee, Elizabeth Kunst, who was employed as a secretary and bookkeeper at Atlas. One claim concerned Kunst's misappropriation of $4,826.80 of Atlas funds. As previously noted, Lumbermans paid this claim.

The other claim concerned Kunst's misappropriation of $64,588.79 from R&R. Although Kunst was not an employee of R&R, she had access to the R&R checking account by virtue of an arrangement between Atlas and R&R, in which Atlas provided administrative services for the processing and payment of R&R bills.[1] In the course of writing checks to pay the R&R bills, Kunst fraudulently wrote checks payable to herself from the R&R banking account and, thereby, misappropriated the $64,588.79.

In a handwritten confession to the local police, Kunst admitted the misappropriations from both Atlas and R&R. She characterized the R&R check-writing scheme as involving loans which she intended to pay back. Kunst committed suicide shortly after the thefts were discovered.

2. *The provisions of the EDP.* The terms of coverage in the policy for acts of dishonesty by an Atlas employee, the limita-

[1]Although Atlas and R&R were independent businesses, there were common incidents of ownership, in that the two stockholders of Atlas were also the trustees and the beneficiaries of R&R. In addition, Atlas leased space from R&R. These common incidents do not alter our analysis concerning the EDP, as to which Atlas was the sole applicant and the sole insured company. Specifically, the EDP identifies the "named insured" on the declarations page as Atlas Metal Products Company, Inc.; this identification has been held to designate only the individual or entity so listed on the declarations page of the policy. *Jacobs* v. *United States Fid. & Guar. Co.*, 417 Mass. 75, 78 (1994).

tions on coverage, and the particularized (and expressly stated) exclusions from coverage in the EDP which are most germane to the issue presented may be classified in segments involving (1) the defined term for insurance "coverage,"[2] subject to the corresponding limitation that coverage was restricted to a *direct* loss of property of the named insured, Atlas; (2) the exclusion from coverage of any *indirect* loss, subject to the further refining exclusion for any damage payment by the insured to a third-party entity for any legal liability arising out of acts by a dishonest employee of the insured[3]; and (3) the defined term for "covered property,"[4] subject to the corresponding limitations that such property must (a) be held or owned by the insured, or (b) be property for which the insured itself was legally liable,

---

[2]Coverage in the EDP is defined as follows:

"A. COVERAGE

"*We will pay for loss of,* and loss from damage to, *Covered Property resulting directly* from the Covered Cause of Loss.

"1. Covered Property: 'Money,' 'securities,' and 'property other than money and securities.'

"2. Covered Cause of Loss: 'Employee dishonesty.' "

(Emphasis added.)

[3]The general exclusions in the EDP include the following:

"*We will not pay for* loss as specified below:

". . .

"3. *Indirect Loss*: Loss that is an indirect result of any act or 'occurrence' covered by this insurance *including but not limited to, loss resulting from*:

". . .

"b. *Payment of damages of any type for which you are legally liable* . . . ."

(Emphasis added.)

[4]In the general conditions of the EDP, covered property is defined as follows:

"The property covered under this insurance is limited to property:

"a. That you own or hold; or

"b. For which you are legally liable.

"However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization."

but with a further qualification that, as to this latter property class, payments for any loss of such property were limited to returning a direct benefit to the insured, and were not to accrue any benefit to, or provide any right of entitlement to, any other entity or person.

Lumbermans contends that, construed together, these terms in the policy mean that the EDP provided coverage only for acts of dishonesty by an Atlas employee that resulted in a direct loss of Atlas covered property, but excluded from such coverage any indirect losses to third parties and any damage payments Atlas may have been required to tender to third parties — even if such damages were caused by the dishonest acts of an Atlas employee, and even if Atlas were legally liable for such damages. With the policy so construed, Lumbermans submits that the R&R misappropriations by Kunst were not subject to coverage under the EDP because the unauthorized withdrawals from the R&R checking account were not direct losses to Atlas, and the R&R checking account was not covered property of Atlas. Rather, it asserts, the thefts from R&R involved indirect losses to a separate business entity, expressly excluded from coverage under the EDP. Lastly, Lumbermans submits that, to the extent Atlas was legally liable for, and paid damages to R&R for Kunst's misappropriations, the EDP excluded coverage for any such damage payments by Atlas.

Restated in the parlance of the insurance industry, Lumberman's position is that the EDP is an employee "fidelity policy" with insuring effect intrinsic to the business and property of the insured employing entity and only affording protection against dishonest acts of the insured's employees that result in a direct loss to the insured of its covered property.[5] Such an employee fidelity policy, it is submitted, is to be contrasted with a broader general liability policy, which has extrinsic and external insuring effect and affords protection against damage claims for losses sustained by third-party persons and businesses.

Atlas reads the policy differently and counters that coverage is available by virtue of the references appearing in the EDP to

---

[5] Atlas also sued its insurance broker claiming that the broker was negligent by failing to add R&R as a "named insured" in the EDP. This claim was settled.

"legal liability" to potential third-party claimants that may have been harmed as a result of acts of a dishonest employee of the insured, Atlas. In particular, Atlas cites the phrase in the covered property section, which states that the "property covered under this insurance is limited to property: (a) That you own or hold; or (b) For which you are legally liable." See note 4, *supra.* Atlas submits that because it was legally liable to R&R for Kunst's misappropriation under the doctrine of vicarious liability, it was obligated to reimburse R&R for the thefts. Atlas contends that it therefore sustained a covered loss.[6]

The construction by Atlas, built on the phrase "legally liable," ignores the overarching, keystone exclusions in the EDP both for indirect losses, and for Atlas's payments of damages of any type for third-party claims as to which Atlas might be legally liable on account of acts of dishonesty by its employees. See note 3, *supra.* Furthermore, Atlas's heavy reliance on the phrase "legally liable" in the covered property section of the EDP also ignores the explicit restriction on that phrase in the immediately succeeding sentence, which states that any insurance payment for this class of property involving legal liability must confer a direct benefit upon the named insured, and "provides no rights or benefits to any other person or organization." See the definition of "covered property" in note 4, *supra.*

We are of the opinion that, as matter of law, the separate R&R checking account maintained by a bank and holding funds of R&R was not property of Atlas. Stated another way, there is nothing in this record to show that this checking account in the name of an uninsured separate company fell within the covered property of Atlas under the EDP. This property law distinction and its application in the context of insurance coverage in an employee dishonesty policy is also illustrated in the recent Federal case *Fireman's Fund Ins. Co.* v. *Special Olympics Intl.,*

---

[6]In order to capture the independent R&R checking account, Atlas alternatively asserts on appeal that the fact that Kunst, an Atlas employee, had access to R&R checks rendered the R&R checking account a bailment such that the R&R checking account was properly being held by Atlas and for which Atlas was legally liable. We disagree. The law of bailment is inapplicable. See generally *King* v. *Trustees of Boston Univ.,* 420 Mass. 52, 59-60 (1995).

*Inc.*, 346 F.3d 259 (1st Cir. 2003). In that case, an employee of a charitable organization falsely solicited funds using the charity's name, fraudulently opened a checking account in the charity's name, and deposited donations received into that shadow account. The employee then misappropriated close to $1 million from the checking account. The charity submitted a claim to the insurer under its employee dishonesty policy seeking to recoup the amount of the contributions stolen in the scheme. The insurer in that case, as did the insurer in the instant case, denied the claim. Applying Massachusetts law, the Federal District Court held that the checking account established by the employee, which held third-party donor contributions, could not be deemed to be covered property of the insured charity. The United States Court of Appeals for the First Circuit determined it would not reach the nuances of State gift law, stating that "[the charity's] fidelity insurance policies, consistent with the industry standard, contained provisions that unambiguously limited coverage to episodes of employee dishonesty that involved conduct intended to lead to a diminution in the insured's assets. [The charity] offers no facts that would permit a factfinder to conclude that [the employee's] fraudulent scheme was directed at the organization's resources." *Id.* at 263-264. That is similarly the situation with respect to the R&R checking account. In our view, this clearly was not a resource of Atlas.[7] See also *Lynch Properties, Inc.* v. *Potomac Ins. Co.*, 140 F.3d

---

[7]In addition to the property law issue, the Federal District Court also held coverage was properly denied based on limitations in the insurer's employee dishonesty policy, which excluded indirect losses and damage payments to third parties. These provisions appear to be similar to the limitations on coverage set forth in the Lumbermans EDP. Although the instant case, wherein the Atlas employee simply wrote fake checks to herself under the guise of nonexistent R&R bills, involved a simpler deceptive artifice than was involved in the manner and means of the fake charitable solicitation-bank deposit-and-theft scheme in the *Fireman's Fund* case, the analysis of the underlying insurance coverage issues in that Federal case, construing Massachusetts law in a diversity action, serves as an interesting analog. In light of the insuring limitations, the court held that coverage for the employee's thefts from a separate checking account was also properly denied under the policy because the losses were not direct losses to the charity. Further, the court held that coverage was unavailable, even if the charity made reimbursement to the third-party donors in order to avoid the tarnishing of its good name. On this point of reimbursement — a point also advanced by R&R in this case — the Federal District Court held that, even assuming the charity "would suffer a loss if it chose to

622, 629 (5th Cir. 1998) (employee dishonesty policy did not cover misappropriations from personal account of client); *Continental Bank, N.A.* v. *Aetna Cas. & Sur. Co.*, 164 Misc. 2d 885, 889 (N.Y. Sup. Ct. 1995) ("Coverage was not triggered because the loss resulted from transactions in a customer's account").

As another tack, Atlas contends that the reference to legal liability created an ambiguity, which ambiguity should be construed against Lumbermans, as drafter of the policy. We discern no such ambiguity. The term "legally liable" in the EDP is integrated in, and subject to, the limitations upon what shall be deemed covered property, as well as the clear and explicit exclusions in the policy for damage payments and benefits limited to the named insured. So anchored, the EDP's reference to legal liability was not free floating, so as to catch all potential liability to third parties and separate corporate entities, such as a general liability policy might. "Mere insertion of the words 'legal liability' into an employee dishonesty policy does not transform the policy into a liability policy." *Lynch Properties, Inc.* v. *Potomac Ins. Co.*, 140 F.3d at 629, and cases cited. Accord *Vons Cos.* v. *Federal Ins. Co.*, 212 F.3d 489, 492 (9th Cir. 2000).

For the above articulated reasons, we reject the construction proposed by Atlas. To extend the insurance coverage as Atlas advocates would, in effect, transform this employee dishonesty fidelity policy into a general liability policy, spreading risk exposure to a class of independent third-party business entities and persons far beyond the single named insured signatory to the policy, here Atlas. If so revamped, this now broadened EDP would, in effect, render Lumbermans responsible for any legal liability incurred by Atlas and any damages paid to others by Atlas on account of dishonest acts of Atlas employees. See *Fireman's Fund Ins. Co.* v. *Special Olympics Intl., Inc.*, 346 F.3d at 263 ("courts typically deem third-party losses as outside the coverage of fidelity policies"); *Three Garden Village Ltd.*

---

reimburse the deceived donors, . . . such reimbursement also would not trigger coverage because it would fall within the policies' 'indirect loss' exclusion." *Fireman's Fund Ins. Co.* v. *Special Olympics Intl., Inc.*, 346 F.3d at 262.

*Partnership* v. *United States Fid. & Guar. Co.*, 318 Md. 98, 115 (1989) ("Fidelity [policies] are a form of first party coverage, indemnifying the obligee for its loss and are not a form of third-party coverage, indemnifying the insured for its liability to third persons"). In this respect, we note that Atlas did not buy a general liability policy, nor did Atlas pay premiums for such a general liability policy with broader risk exposure.

Where an employee dishonesty fidelity policy has provisions such as appear in this Lumbermans-Atlas EDP, which limit coverage to direct property losses and exclude both indirect losses and the payment of damages to third parties, the policy cannot be deemed to cover general legal liability for damages due to independent third-party entities. This is so even if the insured may have exposure in damages to such entities.

Our construction of an EDP structured as in this case follows the analysis of other courts in similar cases. See *In re Ben Kennedy & Assocs., Inc.*, 40 F.3d 318 (10th Cir. 1994); *Lynch Properties, Inc.* v. *Potomac Ins. Co.*, 140 F.3d 622 (5th Cir. 1998); *Three Garden Village Ltd. Partnership* v. *United States Fid. & Guar. Co.*, 318 Md. at 115-116; *175 E. 74th Corp.* v. *Hartford Acc. & Indem. Co.*, 51 N.Y.2d 585 (1980); *Drexel Burnham Lambert Group, Inc.* v. *Vigilant Ins. Co.*, 157 Misc. 2d 198, 209 (N.Y. Sup. Ct. 1993); *Fireman's Fund Ins. Co.* v. *Puget Sound Escrow Closers, Inc.*, 96 Wash. App. 227 (1999); *Commercial Bank of Bluefield* v. *St. Paul Fire & Marine Ins. Co.*, 175 W. Va. 588 (1985).

3. *Manifest intent.* Apart from the black letter provisions of the EDP, which support the entry of summary judgment as matter of law, there is a separate and independent factual basis that warranted the entry of summary judgment. The EDP covers "only dishonest acts committed by an 'employee,' . . . acting . . . with the manifest intent to: 1) Cause you to sustain loss . . . ." There is no disputed material fact concerning Kunst's knowledge that Atlas and R&R were separate entities. Indeed, Kunst's confession differentiated between the two separate businesses and made clear that, in writing fraudulent checks on the R&R checking account, Kunst was aware she was taking funds from R&R, not from Atlas. Kunst's reference to loans from R&R corroborates this distinction. Thus, it was

not established, as required by the EDP, that Kunst had the "manifest intent" to cause Atlas (rather than R&R) to sustain a loss when she misappropriated the R&R funds.[8] See *Fireman's Fund Ins. Co.* v. *Special Olympics Intl., Inc.*, 346 F.3d at 262-264.

*Judgment affirmed.*

---

[8]Atlas argues that Kunst's confession was improperly admitted and should not have been considered by the motion judge on the issue of manifest intent. We disagree. The confession was properly accepted in evidence as a declaration against Kunst's penal interest. See *Commonwealth* v. *Drew*, 397 Mass. 65, 73 (1986).