BRIAN NELSON, administrator,[1] *vs.* MASSACHUSETTS PORT
AUTHORITY.

No. 00-P-383.

Middlesex. February 7, 2002. - July 12, 2002.

Present: GELINAS, CYPHER, & KANTROWITZ, JJ.

*Wrongful Death. Negligence,* Wrongful death.

In a civil action for wrongful death and for conscious pain and suffering aris-
ing out of the suicide of the plaintiff's decedent committed by jumping off
a bridge that the defendant owned and operated, the judge properly granted
summary judgment in favor of the defendant, where the defendant neither
caused the decedent's uncontrollable suicidal impulse nor had custody of
the decedent and knowledge of her suicidal ideation. [434-436]

CIVIL ACTION commenced in the Superior Court Department on
August 24, 1995.

The case was heard by *Raymond J. Brassard,* J., on a motion
for summary judgment.

*Howard S. Ross* for the plaintiff.

*Christopher A. Kenney* for the defendant.

KANTROWITZ, J. What is the duty of one who owns a bridge to
one who commits suicide by jumping from it? The plaintiff,
Brian Nelson, administrator of the estate of the decedent, Kath-
leen Nelson, brought an action for wrongful death pursuant to
G. L. c. 229, § 2, and for conscious pain and suffering pursuant
to G. L. c. 229, § 6, against the defendant, Massachusetts Port
Authority (Massport). A Superior Court judge allowed Mass-
port's motion for summary judgment, and the plaintiff now
appeals. We affirm.

*Facts.* Massport owns and operates the Tobin Bridge. Ap-
proximately twelve people per year, for at least ten years prior

[1]Of the estate of Kathleen Nelson.

to the decedent's death, have attempted suicide by jumping off this bridge.

In 1986, Massport promulgated procedures to deal with the effects of attempted suicides on the bridge, and installed a camera surveillance system[2] which covered fifty percent of the bridge.

The decedent had received treatment for depression at the Stoney Brook Counseling Center (Stoney Brook). She began to express suicidal ideation to the staff at Stoney Brook on August 20, 1992. On August 28, 1992, she drove to the middle of the Tobin Bridge in Boston, stopped at a location without camera surveillance,[3] got out of her car, and jumped to her death.

*The claim.* Brian Nelson, as administrator of the estate of Kathleen Nelson, brought an action for wrongful death and conscious pain and suffering against Massport and others,[4] and demanded a jury trial. The complaint alleged that Massport "negligently failed to institute adequate safeguards to prevent individuals from taking their own lives by jumping [off] the Tobin Bridge, which was under its control."

On appeal, the plaintiff argues that the Superior Court judge erred in allowing Massport's motion for summary judgment and misstated the law in ruling that suicide bars recovery in wrongful death actions unless it was the defendant's prior wrongful act that caused the disturbed state of mind leading to the suicide.

*Discussion.* Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as matter of law. *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 553 (1976). *Cassesso* v. *Commissioner of Correction,* 390 Mass. 419, 422 (1983). Mass.R.Civ.P. 56(c), 365

---

[2]Russell Mazzola, a former deputy bridge director, stated in his deposition that the primary reason for the camera surveillance system was to protect against the safety hazard of stopped vehicles, which sometimes resulted from suicide attempts on the bridge.

[3]The plaintiff was unable to point out, either in his brief or at oral argument, how a camera surveillance system covering one hundred percent of the bridge would have prevented the decedent's death.

[4]The plaintiff also named as defendants Comprehensive Out-Patient Services, Inc., doing business as Stoney Brook Counseling Center, and three of its employees, Wendy Caplan, Stephen Farina, and Bruce Mermelstein.

Mass. 824 (1974). The moving party bears "the burden of affirmatively demonstrating" the absence of a triable issue, and that it is entitled to judgment as matter of law. *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989). Once "the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat" the motion. *Id.* at 17.

Although summary judgment is seldom sought or granted in negligence cases, it may be appropriate in some instances. See *Manning* v. *Nobile*, 411 Mass. 382, 388 (1991). For example, where the party who does not have the burden of proof at trial establishes that the other party could not prove an essential element of its claim, summary judgment may be appropriate. See *ibid.*

"Negligence . . . is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting on him, the person of ordinary caution and prudence ought to exercise under the particular circumstances. It is a want of diligence commensurate with the requirement of the duty at the moment imposed by the law." *Altman* v. *Aronson*, 231 Mass. 588, 591 (1919). "In any negligence cause of action, there are four elements on which plaintiffs must adduce adequate evidence to prevail. Plaintiffs must show: (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." *Jorgensen* v. *Massachusetts Port Authy.*, 905 F.2d 515, 522 (1st Cir. 1990).

The cases cited by the plaintiff as permitting recovery under negligence principles for a decedent's suicide fit into two distinct fact patterns, neither of which is present here: either (1) the defendant's negligence was the cause of the decedent's uncontrollable suicidal impulse, see *Daniels* v. *New York, N.H. & H.R.R.*, 183 Mass. 393, 397-400 (1903); *Freyermuth* v. *Lutfy*, 376 Mass. 612, 620 (1978) ("the judge was warranted in finding that [the decedent], on account of mental derangement precipitated by the [motor vehicle] accident [caused by the defendant], was incapable of resisting the impulse to destroy herself"); or (2) the decedent was in the defendant's custody

and the defendant had knowledge of the decedent's suicidal ideation. See *Slaven* v. *Salem,* 386 Mass. 885, 888 (1982) (prison); *McNamara* v. *Honeyman,* 406 Mass. 43, 55 (1989) (State mental hospital).

In the present case, Massport neither caused the decedent's uncontrollable suicidal impulse nor had custody of the decedent and knowledge of her suicidal ideation. We decline to impute to the defendant a greater duty than currently exists.

Massport owed the decedent the same duty owed to all those lawfully on the bridge: "a duty to use reasonable care to maintain its property in a reasonably safe condition." *Thorson* v. *Mandell,* 402 Mass. 744, 747 (1988), citing *Mounsey* v. *Ellard,* 363 Mass. 693, 707 (1973). Massport was "not obliged to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate." *Toubiana* v. *Priestly,* 402 Mass. 84, 88 (1988), quoting from *Gadowski* v. *Union Oil Co.,* 326 F.2d 524, 525 (1st Cir. 1964) (no duty to protect from obvious dangers).

The Superior Court judge's allowance of summary judgment in favor of Massport was correct.

*Judgment affirmed.*