■ ANTHONY TURTURRO, an Infant, by His Mother and Natural Guardian, ELIDA TURTURRO, et al., Respondents, v CITY OF NEW YORK, Respondent-Appellant, and LOUIS PASCARELLA et al., Appellants-Respondents. [5 NYS3d 306]—

In an action to recover damages for personal injuries, the defendants Louis Pascarella and Beatrice Pascarella appeal from so much a judgment of the Supreme Court, Kings County (Kramer, J.), dated July 30, 2012, as, upon a jury verdict find-

ing the infant plaintiff 10% at fault in the happening of the accident, the defendant Louis Pascarella 50% at fault, and the City of New York 40% at fault, finding that the infant plaintiff sustained damages, inter alia, in the principal sums of $6,000,000 for past pain and suffering, $15,000,000 for future pain and suffering, $11,500,000 for future medical expenses, and $3,000,000 for future lost earnings, and finding that the plaintiff Elida Turturro sustained damages in the principal sum of $75,000 for loss of services, upon an order of the same court dated February 6, 2012, inter alia, denying that branch of their motion pursuant to CPLR 4404 (a) which was to set aside the verdict on the issue of liability and granting those branches of their motion which were to set aside the verdict on the issue of damages only to the extent of granting a new trial unless the plaintiffs stipulated to reduce the award as to future pain and suffering from $15,000,000 to $10,000,000 and the award as to future medical expenses from $11,500,000 to $7,000,000, and upon the plaintiffs' stipulation to those reductions, is in favor of the plaintiffs and against them, and the defendant City of New York cross-appeals from so much of the same judgment as, upon the jury verdict, upon the order dated February 6, 2012, among other things, denying that branch of its separate motion pursuant to CPLR 4404 (a) which was to set aside the verdict on the issue of liability and granting those branches of its motion which were to set aside the verdict on the issue of damages only to the extent indicated, and upon the plaintiffs' stipulation, is in favor of the plaintiffs and against it.

Ordered that the judgment is modified, on the facts, (1) by deleting the provision thereof awarding the plaintiff Elida Turturro the principal sum of $75,000 for the loss of the infant plaintiff's services, and substituting therefor a provision dismissing that cause of action, and (2) by deleting the provisions thereof awarding damages to the infant plaintiff in the principal sums of $6,000,000 for past pain and suffering and $10,000,000 for future pain and suffering; as so modified, the judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for a new trial on the issues of damages for past and future pain and suffering, unless within 30 days after service upon the plaintiffs of a copy of this decision and order, the plaintiffs serve and file in the office of the Clerk of the Supreme Court, Kings County, a written stipulation consenting to reduce the amount of damages for past pain and suffering from the principal sum of $6,000,000 to the principal sum of $3,000,000, and to further reduce the amount of damages for future pain and suffering from the principal sum of $10,000,000 to the

principal sum of $7,000,000, and to the entry of an appropriate amended judgment accordingly; in the event that the plaintiffs so stipulate, then the judgment, as so reduced and amended, is affirmed, without costs or disbursements.

On December 5, 2004, at approximately 6:25 p.m., the infant plaintiff, who was then 12 years old, was struck by an automobile while riding his bicycle on Gerritsen Avenue in Brooklyn. The automobile was owned by the defendant Beatrice Pascarella and operated by the defendant Louis Pascarella. According to a police report, the vehicle was traveling at a minimum speed of 54 miles per hour in a posted 30 mile-per-hour zone at the time of impact.

As a result of the accident, the infant plaintiff was in a coma for approximately five months. He sustained, among other things, a severe head and brain injury, including extensive fractures to the skull, subdural hematomas, and intracranial hypertension. He also sustained fractures to his ankle and hip, and a collapsed lung. He underwent numerous surgeries and developed several complications, including a seizure disorder. The brain injuries permanently diminished the infant plaintiff's cognitive and motor functioning.

The infant plaintiff, by his mother, and his mother, individually, commenced this action against the Pascarellas and the City of New York. After a trial on the issues of both liability and damages, the jury returned a verdict finding the infant plaintiff 10% at fault in the happening of the accident, Louis Pascarella 50% at fault, and the City 40% at fault. The jury awarded the infant plaintiff $6,000,000 for past pain and suffering, $15,000,000 for future pain and suffering, $11,500,000 for future medical expenses, and $3,000,000 for future lost earnings. The parties stipulated as to past medical expenses. The jury also awarded the infant plaintiff's mother the sum of $75,000 for loss of his services.

The City and the Pascarellas separately moved pursuant to CPLR 4404 (a), inter alia, to set aside the verdicts on the issues of liability and damages. The Supreme Court denied those branches of the defendants' separate motions which were to set aside the verdict on the issue of liability, and granted those branches of their separate motions which were to set aside the verdict on the issue of damages, but only to the extent of granting a new trial unless the plaintiffs stipulated to reduce the award as to future pain and suffering to $10,000,000 and the award as to future medical expenses to $7,000,000. The plaintiffs so stipulated, and a judgment was entered in favor of them and against the defendants. The Pascarellas appeal, and the City cross-appeals, from the judgment.

The City first argues that the cause of action against it should have been dismissed because the plaintiffs failed to plead or prove the existence of a "special duty." This contention is without merit. When a negligence cause of action is asserted against a municipality, the court must first decide whether the municipal entity was engaged in a proprietary function or was acting in a governmental capacity at the time the claim arose (*see Wittorf v City of New York*, 23 NY3d 473, 478 [2014]; *Applewhite v Accuhealth, Inc.*, 21 NY3d 420, 425 [2013]; *Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428, 446-447 [2011]; *Estate of Gail Radvin v City of New York*, 119 AD3d 730, 732 [2014]). If the municipality's activities are proprietary in nature, the municipality is subject to suit under the ordinary rules of negligence applicable to nongovernmental parties (*see Wittorf v City of New York*, 23 NY3d at 478; *Applewhite v Accuhealth, Inc.*, 21 NY3d at 425; *Estate of Gail Radvin v City of New York*, 119 AD3d at 732). By contrast, if the municipality was exercising a nondiscretionary governmental function, it will not be held liable unless it owed a "special duty" to the injured party (*see Applewhite v Accuhealth, Inc.*, 21 NY3d at 426; *Valdez v City of New York*, 18 NY3d 69, 75 [2011]).

Here, the plaintiffs alleged, among other things, that the City was negligent in that it received numerous complaints that vehicles were speeding and racing along the entire length of Gerritsen Avenue, but completely failed to conduct a proper and adequate study of this speeding problem, and failed to implement a reasonable plan to control or resolve the dangerous condition presented on the roadway. Since a municipality's duty to keep its roads and highways in a reasonably safe condition is proprietary in nature (*see Wittorf v City of New York*, 23 NY3d at 480), the City's contention that it cannot be held liable under the plaintiffs' theory absent the existence of a "special duty" to the infant plaintiff must be rejected (*see Fulgum v Town of Cortlandt*, 2 AD3d 775, 777 [2003]; *see generally Applewhite v Accuhealth, Inc.*, 21 NY3d 420 [2013]).

The City's argument that the causes of action asserted against it must be dismissed because it is entitled to immunity is also without merit. In the field of traffic design engineering, a municipality is accorded qualified immunity from liability arising out of its highway planning decisions (*see Friedman v State of New York*, 67 NY2d 271, 283 [1986]; *Mare v City of New York*, 112 AD3d 793, 794 [2013]; *Kuhland v City of New York*, 81 AD3d 786, 787 [2011]). The doctrine of qualified immunity, however, will only apply where the municipality has conducted a study which " 'entertained and passed on the very

same question of risk' " (*Kuhland v City of New York*, 81 AD3d at 787, quoting *Weiss v Fote*, 7 NY2d 579, 588 [1960]) as was alleged by the plaintiff. Indeed, a municipality may be held liable if, "after being made aware of a dangerous traffic condition, it does not undertake an adequate study to determine what reasonable measures may be necessary to alleviate the condition" (*Bresciani v County of Dutchess, N.Y.*, 62 AD3d 639, 640 [2009]; *see Affleck v Buckley*, 96 NY2d 553 [2001]; *Ernest v Red Cr. Cent. School Dist.*, 93 NY2d 664 [1999]; *Friedman v State of New York*, 67 NY2d 271 [1986]; *Mare v City of New York*, 112 AD3d 793 [2013]; *Scott v City of New York*, 16 AD3d 485 [2005]). Moreover, after a municipality implements a traffic plan, "it is 'under a continuing duty to review its plan in the light of its actual operation' " (*Friedman v State of New York*, 67 NY2d at 284, quoting *Weiss v Fote*, 7 NY2d at 587; *see Kosoff-Boda v County of Wayne*, 45 AD3d 1337, 1338 [2007]).

At the trial, testimony and documentary evidence indicated that, over a period of several years prior to the subject accident, the City had received numerous complaints from neighborhood residents and elected officials that certain intersections along Gerritsen Avenue that were not controlled by traffic signals posed a danger to school children crossing the street, and that vehicles were speeding and racing along the entire length of Gerritsen Avenue, thus creating a dangerous speeding condition. The City tendered evidence showing that, in response to these complaints, the Intersection Control Unit (hereinafter the ICU) of the New York City Department of Transportation (hereinafter the DOT) conducted several traffic studies related to Gerritsen Avenue. While it was undisputed that these studies considered and addressed the issue of whether traffic signals were warranted at the specified intersections, there was conflicting testimony as to whether these studies also considered and addressed the question of what reasonable measures might be necessary to respond to the risks presented by vehicles speeding and racing along the overall length of Gerritsen Avenue. In connection with this issue, the Chief of the ICU testified that she had never been asked to study a complaint of speeding along the entire stretch of a roadway, that she did not know of any study that looked at a complaint of speeding along the entire stretch of Gerritsen Avenue, and that she did not know whether any measures to slow down or otherwise control vehicular traffic, known in the field of traffic engineering as traffic-calming measures, had been considered for the strip as a whole. While she indicated that spot studies conducted by the ICU utilized some elements that would be found in a traffic-calming study, she acknowl-

edged that the spot studies were not, in fact, traffic-calming studies. The woman who served as the Brooklyn Borough Engineer (hereinafter the BBE) at the time of the accident similarly testified that she was never asked to conduct any study concerning speeding vehicles on Gerritsen Avenue. The BBE noted that any complaints regarding vehicles speeding along a section of a roadway should have been relayed to her office, and acknowledged that she was not aware of the complaints of this nature regarding Gerritsen Avenue. The plaintiffs' expert, a transportation forensic engineer, opined, inter alia, that the studies conducted by the ICU only addressed the question of whether traffic signals were warranted at certain specified intersections, that they did not consider the corridor as a whole, and that they were not adequate in terms of addressing the risks posed by vehicles speeding along the overall length of the roadway.

The City presented testimony from the Chief of Signals in the DOT's Division of Traffic Operations and from its own retained expert, a civil transportation engineer. The Chief of Signals stated that, considering the nature of the speeding complaints, it was appropriate for those complaints to be routed to the ICU for review. He noted, among other things, that the ICU, in conducting the studies with respect to Gerritsen Avenue, collected data regarding vehicle speed, and that, in response to this data, it notified the local New York City Police Department precinct of its findings and requested additional police enforcement of the speed limit. The Chief of Signals also acknowledged, however, that the ICU was not a division of the DOT that was responsible for the implementation of traffic-calming measures and that, at the time of the accident, the DOT's Planning Unit undertook traffic-calming studies. Similarly, while the City's expert opined that the ICU's studies were adequate and appropriate given the nature of the complaints, he also acknowledged that the ICU studies were not, in fact, traffic-calming studies.

Considering the testimony and documentary evidence presented, there was a rational process by which the jury could have found that the City had notice that excessive speeding along the length of Gerritsen Avenue created a dangerous condition and that the City failed, in response to the complaints it received, to conduct a study which " 'entertained and passed on [this] very same question of risk' " (*Kuhland v City of New York*, 81 AD3d at 787, quoting *Weiss v Fote*, 7 NY2d at 588) posed by excessive speeding along Gerritsen Avenue. As such, the doctrine of qualified immunity does not apply (*see Kuhland v City of New York*, 81 AD3d at 787).

Similarly, there was a rational process by which the jury could have found that the frequency of speeding cars along the roadway was unreasonably dangerous, and that the City's negligence in terms of studying the problem and implementing a plan to mitigate or resolve the problem was a proximate cause of the accident (*see Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]; *Kuhland v City of New York*, 81 AD3d 786, 787 [2011]). We thus reject the City's contention that the negligence of Louis Pascarella in the operation of his vehicle was the sole proximate cause of the accident. Contrary to the City's contention, there was also a valid line of reasoning supporting the jury's apportionment of fault (*see Travelers Indem. Co. v S.T.S. Fire Prevention*, 41 AD3d 835, 835-836 [2007]; *Crawford v New York City Hous. Auth.*, 33 AD3d 956, 957 [2006]). Moreover, we are not persuaded that these findings were contrary to the weight of the evidence (*see Lolik v Big v Supermarkets*, 86 NY2d 744 [1995]; *Kuhland v City of New York*, 81 AD3d at 787).

There is no merit to the City's argument that the causes of action against it must be dismissed because the plaintiffs' notice of claim was inadequate. As the plaintiffs correctly point out, the notice of claim adequately apprised the City that the plaintiffs would seek to impose liability on the theory that the City was negligent in failing to conduct proper and adequate studies of a known speeding problem, and for failing to timely implement a plan to mitigate or resolve the problem (*see Bartley v County of Orange*, 111 AD3d 772, 774 [2013]; *DeLeonibus v Scognamillo*, 183 AD2d 697, 698 [1992]).

We also reject the City's contention that the interrogatories submitted to the jury were unfair and prejudicial to it. When considered in conjunction with the charge as a whole, the interrogatories did not create substantial confusion for the jury. The interrogatories and the jury charge were set forth in easily understandable language, and made clear that the jury had to first determine whether the City was negligent, and then determine whether, if so, any such negligence was a substantial factor in causing the injuries sustained by the infant plaintiff (*see Brewster v Prince Apts.*, 264 AD2d 611, 615-616 [1999]; *Booth v Penney Co.*, 169 AD2d 663, 664 [1991]). As the record is devoid of any indication that the jurors were substantially confused, a new trial is not warranted on that ground (*see Somma v Seminario*, 209 AD2d 687 [1994]). Moreover, under the circumstances presented here, the Supreme Court did not err in giving a *Noseworthy* charge to the jury (*see Noseworthy v City of New York*, 298 NY 76 [1948]; *Acevedo v Hog Wing Lau*, 88 AD3d 751 [2011]; *DeLuca v Cerda*, 60 AD3d 721-722 [2009]).

However, to the extent indicated herein, the damages awarded for past pain and suffering and future pain and suffering deviated materially from what would be reasonable under the circumstances (*see* CPLR 5501 [c]; *Belt v Girgis*, 82 AD3d 1028 [2011]; *Dockery v Sprecher*, 68 AD3d 1043, 1046-1047 [2009]; *Benefield v Halmar Corp.*, 25 AD3d 633, 635 [2006]). Moreover, as there was no proof of loss of services, the award in favor of the infant plaintiff's mother in the amount of $75,000 cannot be sustained (*see Devito v Opatich*, 215 AD2d 714, 715 [1995]). Nonetheless, given the expert testimony elicited at trial, we decline to disturb the awards for future medical expenses and future lost earnings (*see Placakis v City of New York*, 289 AD2d 551, 553 [2001]).

There is no merit to the Pascarellas' contentions that the Supreme Court erred in admitting evidence that, on one occasion prior to the subject accident, a ticket had been issued to Louis Pascarella for speeding along Gerritsen Avenue, or in precluding the grand jury testimony of a nonparty witness given in connection with the criminal charges against Louis Pascarella arising from the subject accident. Nor is there merit to the Pascarellas' contention that this witness should have been precluded from testifying at trial as to the visible signs of the infant plaintiff's injuries as they appeared to her immediately after the subject accident.

The City's remaining contentions are without merit. Rivera, J.P., Balkin, Duffy and LaSalle, JJ., concur.