Perlov v Port Auth. of N.Y. & N.J. (2020 NY Slip Op 08092)





Perlov v Port Auth. of N.Y. & N.J.


2020 NY Slip Op 08092


Decided on December 30, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 30, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
SHERI S. ROMAN
COLLEEN D. DUFFY
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.


2018-06265
 (Index No. 501644/17)

[*1]Eugena Perlov, etc., et al., appellants,
v
Port Authority of New York and New Jersey, respondent.


Costigan Law PLLC, New York, NY (William F. Costigan of counsel), for appellants.
Port Authority Law Department, New York, NY (Karla Denalli and Cheryl Alterman of counsel), for respondent.



DECISION & ORDER
In an action to recover damages for wrongful death, the plaintiffs appeal from an order of the Supreme Court, Kings County (Peter P. Sweeney, J.), dated April 19, 2018. The order granted the defendant's motion pursuant to CPLR 3211(a)(7) to dismiss the complaint for failure to state a cause of action.
ORDERED that the order is reversed, on the law, with costs, and the defendant's motion pursuant to CPLR 3211(a)(7) to dismiss the complaint for failure to state a cause of action is denied.
Background
In January 2017, the wife of the decedent, Vladimir Perlov (hereinafter the decedent), individually and as administrator of the decedent's estate, and the decedent's daughter commenced this wrongful death action against the Port Authority of the State of New York and New Jersey (hereinafter the Port Authority), as owner and operator of the George Washington Bridge (hereinafter the bridge). The plaintiffs seek to recover damages arising out of the Port Authority's alleged negligence in failing to prevent the suicide of the decedent, who the plaintiffs alleged died after he jumped off the north walkway of the bridge into the Hudson River in January 2016. In their complaint, the plaintiffs alleged that the Port Authority, inter alia, negligently failed to maintain the bridge in a reasonably safe condition by failing to install suicide-prevention barriers along the pedestrian walkways of the bridge despite being aware of the "extraordinary number of suicides attempted at the location." Specifically, the plaintiffs alleged, among other things, that there is a suicide attempt at the bridge every 3½ days, and that 93 people have died from jumping off the bridge's pedestrian walkways in the 7 years leading up the to alleged suicide of the decedent. The Port Authority subsequently moved pursuant to CPLR 3211(a)(7) to dismiss the complaint for failure to state a cause of action, among other things, on the ground that the Port Authority was acting in a governmental capacity and the complaint failed to allege the existence of a special duty owed by the Port Authority to the decedent. In an order dated April 9, 2018 (hereinafter the April 2018 [*2]order), the Supreme Court granted the motion on the ground that the Port Authority did not have a duty to prevent the decedent's suicide. The plaintiffs appeal. We reverse.
Procedural Posture
"In determining a motion to dismiss a complaint for failure to state a cause of action (see CPLR 3211[a][7]), the court must read the complaint liberally and assume that the plaintiffs' allegations are true" (Heeran v Long Is. Power Auth. [LIPA], 141 AD3d 561, 562, affd sub nom. Connolly v Long Is. Power Auth., 30 NY3d 719). "If the allegations, as supplemented by any affidavits, fit within any cognizable legal theory, the court must deny the motion to dismiss" (id. at 562). "Whether the complaint will later survive a motion for summary judgment, or whether the plaintiff will ultimately be able to prove its claims, of course, plays no part in the determination of a prediscovery CPLR 3211 motion to dismiss" (Shaya B. Pac., LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, 38 AD3d 34, 38). Here, no discovery has yet occurred nor has any evidence been presented. The plaintiffs allege in the complaint that the death of the decedent arose from the Port Authority's failure to maintain the bridge in a reasonably safe condition (see e.g. Turturro v City of New York, 28 NY3d 469, 479) in its construction, operation, and maintenance of the bridge. Contrary to the contention of our colleagues in the dissent, assuming these allegations to be true for the purposes of this motion pursuant to CPLR 3211(a)(7), the allegations are sufficient to support a determination that the Port Authority was acting in its proprietary capacity and is subject to the same principles of tort law as a private landowner (see Miller v State of New York, 62 NY2d 506, 511; Heeran v Long Is. Power Auth. [LIPA], 141 AD3d at 563).
Proprietary versus Governmental Role
As recognized by our colleagues in the dissent, the legislative declaration that the Port Authority is engaging in an essential government function by operating and maintaining the bridge (see McKinney's Uncons Laws of NY § 6515) "is not determinative with respect to the applicability of the government[ ] immunity doctrine to shield [it] from tort liability" (Heeran v Long Is. Power Auth. [LIPA], 141 AD3d at 566).
"The varying nature of civic activities engaged in by the State may sometimes partake of both proprietary and governmental aspects" (Sebastian v State of New York, 93 NY2d 790, 793). "For instance, the State may act in its proprietary capacity as a landlord by virtue of its ownership of and control over a public facility and at the same time act in its governmental capacity by providing police protection to maintain law and order at that facility" (id. at 793-794). "A governmental entity's conduct may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions" (Miller v State of New York, 62 NY2d at 511-512; see e.g. Matter of World Trade Ctr. Bombing Litig., 17 NY3d 428, 446). "Because this dichotomy is easier to state than to apply in some factual scenarios, the determination categorizing the conduct of a municipality may present a close question for the courts to decide" (Applewhite v Accuhealth, Inc., 21 NY3d 420, 425). "For that reason, courts must examine the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred" (Tara N.P. v Western Suffolk Bd. of Coop. Educ. Servs., 28 NY3d 709, 713 [internal quotation marks omitted]).
Here, in evaluating whether the complaint alleges facts which, if true, are sufficient to show that the Port Authority was acting in a proprietary rather than governmental capacity, we are guided by this Court's analysis of what constitutes proprietary action versus governmental action in Turturro v City of New York (127 AD3d 732, 735, affd 28 NY3d at 478-479). In Turturro, the plaintiffs, a mother and her son, a minor, who was seriously injured when he was struck by a speeding vehicle while he was riding his bicycle on a roadway in Brooklyn, alleged that the City of New York had the obligation to conduct a traffic study and implement traffic calming measures through roadway design changes to decrease the frequency of speeding on that road and that the City was aware of the frequent complaints of ongoing speeding on the roadway at issue (see id. at 735). The plaintiffs alleged that the City's negligence in undertaking such measures was a proximate cause [*3]of the child's injuries (see id. at 738). The Court of Appeals rejected the City's argument that the plaintiffs were claiming, in effect, that the City failed to prevent unlawful behavior by police enforcement (see Turturro v City of New York, 28 NY3d at 480-481). This Court recognized that the plaintiffs did not allege that the City was negligent in failing to allocate adequate police resources to enforce speed limits on the roadway. Rather, we held, and the Court of Appeals affirmed, that the specific acts or omissions which the plaintiffs alleged caused the child's injuries arose from the City's failure to keep the roadway in a reasonably safe condition, which constituted a proprietary function within the field of roadway design and safety (see Turturro v City of New York, 127 AD3d at 737-738). Specifically, in Turturro, this Court determined, and the Court of Appeals agreed, that the alleged increased frequency of speeding cars on the roadway at issue could be found to be unreasonably dangerous and the City's alleged negligence in terms of failing to study the problem and implement a plan to mitigate it could be found to be the proximate cause of the plaintiff's injuries (see id.), and that such alleged omissions by the City fell within its proprietary function subject to the ordinary rules of negligence (see id. at 735). Notably, the City did not dispute that maintaining roadways in a safe condition falls within the proprietary role of the City (see Turturro v City of New York, 28 NY3d at 480).
"Historically, the maintenance of roads and highways was performed by both private entities and local governments, with each subject to the ordinary rules of negligence" (Wittorf v City of New York, 23 NY3d 473, 479). The Court of Appeals has held that highway planning, design, and maintenance "are proprietary functions, arising from a municipality's 'proprietary duty to keep its roads and highways in a reasonably safe condition'" (Turturro v City of New York, 28 NY3d at 479, quoting Wittorf v City of New York, 23 NY3d at 480). Here, based on the Turturro analysis of what constitutes a proprietary role, the complaint alleges that the decedent's death arose from the dangerous condition of the bridge in its construction, operation, and maintenance, in effect, that the Port Authority was acting in a proprietary capacity in the design and maintenance of the bridge. Notably, there is no allegation by the plaintiffs that the Port Authority failed to have a sufficient police presence at the bridge to provide protection and security. Rather, the complaint alleges that the decedent's death arose from the Port Authority's failure to maintain the bridge in a reasonably safe condition by negligently failing to install suicide prevention barriers along the bridge's walkways which would have prevented the plaintiff from jumping off the bridge. Neither the Port Authority nor the dissent have delineated a difference between the planning, design, and maintenance of a roadway and that of the bridge at issue here. For the same reasons articulated by this Court in Turturro v City of New York (127 AD3d at 735), and the Court of Appeals in Turturro v City of New York (28 NY3d at 479), with respect to a roadway, the plaintiff's allegations regarding the construction, operation, and maintenance of the bridge are analogous to roadway planning, design, and maintenance, and implicate the proprietary functions of a governmental entity (see Olenick v City of New York (56 Misc 3d 389, 392 [Sup Ct, Kings County]). As the specific acts or omissions that the plaintiffs claim led to the decedent's death arose from the Port Authority's alleged failure to maintain the bridge in a reasonably safe condition, dismissal pursuant to CPLR 3211(a)(7) could only eventuate if the Port Authority demonstrated that the plaintiffs failed to state a cause of action against it in its proprietary capacity (see e.g. Heeran v Long Is. Power Auth. [LIPA], 141 AD3d at 564-566). Here, the Port Authority did not do so.
Cases Cited by Our Colleagues in the Dissent are Inapposite
The New York case cited by our colleagues in the dissent—Clinger v New York City Tr. Auth. (85 NY2d 957)—to shore up their contention that the Port Authority was acting in a governmental capacity, is procedurally and factually inapposite to the case at issue here. Significantly, Clinger involved the propriety of an award of summary judgment in favor of the defendant in the action; here, as noted, the Port Authority seeks dismissal at a much earlier stage of the proceeding—contending that the complaint fails to state a cause of action.
The facts of Clinger are also significantly different than those alleged here. As noted by the Court of Appeals, the key to determining whether the government is acting in a governmental or proprietary role requires an examination of the alleged facts (see Turturro v City of New York, 28 NY3d at 478-479). Notably, in Clinger v New York City Tr. Auth. (85 NY2d at 959), which the [*4]Court of Appeals decided in 1995, years before it decided Tuturro, the plaintiff alleged that she had been raped and assaulted as she walked through an isolated and little-used subway tunnel which was undergoing renovations. The plaintiff commenced the action against the New York City Transit Authority (hereinafter the Transit Authority) to recover damages arising out of that incident, alleging that the Transit Authority had been negligent in storing construction material at the location in such a way that permitted her to be assaulted and in failing to act on a recommendation to close the tunnel, given its extensive history of criminal activity (see id.). There, the Court of Appeals noted that the plaintiff's claims—alleging that the Transit Authority acted in both a proprietary role (location of equipment and duty of municipality to keep the tunnel in a reasonably safe condition) and governmental role (failure, in essence, either to close tunnel or to properly police it)—intersected to create the alleged condition under which she was attacked (see id.). In evaluating the Transit Authority's entitlement to summary judgment, the Court of Appeals concluded that the Transit Authority's act was overwhelmingly governmental in nature and thus determined that summary judgment was appropriate under an analysis of the evidence proffered with respect to the acts of the Transit Authority in its governmental capacity (see id.). The Court of Appeals also noted that the plaintiff's cause of action was "fatally . . . flawed by her inability to establish that the location of [the construction material], rather than the general lack of security in the tunnel, was the proximate cause of her injuries" (id.).
The two out-of-state cases cited by our colleagues in the dissent—Milligan v Golden Gate Bridge Hwy. & Transp. Dist. (120 Cal App 4th 1) and Nelson v Massachusetts Port Auth. (55 Mass App Ct 433, 771 NE2d 209)—are noteworthy, for reasons other than those cited by our colleagues in the dissent. Although our colleagues in the dissent point out that in Milligan v Golden Gate Bridge Hwy. & Transp. Dist. (120 Cal App 4th 1), the negligence cause of action against the government entity was dismissed, the basis for the dismissal was not whether the government was acting in a governmental versus a proprietary capacity, but rather that the plaintiff in that case failed to show that there was proximate cause between the alleged injury and the alleged negligence by the government (see id. at 9). In fact, the California statute at issue in that case, California Government Code section 835, which sets forth the circumstances in California under which a governmental entity may be held liable for maintaining a dangerous condition on public property, articulates standards for determining liability that are akin to those evaluated under the analysis in New York applicable to determining liability when the government is acting in a proprietary capacity, to wit, the general principles of tort negligence (see Milligan v Golden Gate Bridge Hwy. & Transp. Dist., 120 Cal App 4th at 6). The concept of a special duty is not part of that statute (see California Government Code § 835), nor is it part of the court's analysis in that action (see Milligan v Golden Gate Bridge Hwy. & Transp. Dist., 120 Cal App 4th at 6-9). Likewise, the Massachusetts appellate court in Nelson v Massachusetts Port Auth. (55 Mass App Ct at 435-436, 771 NE2d at 211-212), did not apply a governmental versus proprietary function analysis in affirming the order of the Superior Court which granted the motion of the defendant Massachusetts Port Authority (hereinafter the bridge owner) for summary judgment. Rather, it determined that the bridge owner was entitled to summary judgment where (1) approximately six years earlier the bridge owner had promulgated procedures to deal with the effects of attempted suicides from the bridge at issue including installing cameras covering approximately fifty percent of the bridge, (2) the bridge owner had no control over the plaintiff, and (3) was unaware of the plaintiff's suicide ideations (see Nelson v Massachusetts Port Auth., 55 Mass App Ct at 434-436, 771 NE2d at 210-212). In both of these out-of-state cases, the concept of proximate cause was pivotal in the analysis and was addressed. Here, neither party has argued the lack of proximate cause as the basis for dismissal, nor did the Supreme Court reach that issue, and we decline to do so, sua sponte, on the record in this case (see Lewis v Rutkovsky, 153 AD3d 450, 456-457). Instead, we address and reject the narrow thrust of the Port Authority's argument that the complaint fails to state a cause of action due to the plaintiff's failure to allege facts asserting that the Port Authority owed a special duty under a governmental capacity analysis.
Indeed, the allegations here—the failure to keep the bridge in a reasonably safe condition to prevent suicides—are more aligned with the facts in Turturro v City of New York (127 AD3d at 735 [The City was acting in a proprietary capacity because specific acts or omissions the plaintiffs claimed caused the injury arose from the City's failure to keep the roadway in a reasonably safe condition by failing to conduct adequate study of whether to implement roadway design changes [*5]that would control speeding, an illegal activity, on the roadway]) than with the cases cited by our colleagues in the dissent. Thus, neither the procedural posture of this case nor the facts of the cases cited by our colleagues in the dissent lead to a conclusion that, as a matter of law, the alleged acts or omissions of the Port Authority fall within the Port Authority's governmental rather than a proprietary capacity.
Dismissal Pursuant to CPLR 3211(a)(7) is Not Warranted
Contrary to the contention of our colleagues in the dissent, the complaint did not need to allege that the Port Authority owed a special duty to the decedent, as opposed to the public generally, as the Port Authority did not establish that it was acting in a governmental capacity in maintaining the bridge (see Turturro v City of New York, 28 NY3d at 483). Since the complaint has alleged facts that support a determination that the Port Authority was acting in a proprietary capacity, the Port Authority would be subject to the same principles of tort law as a private landowner, and as such, the complaint states a cause of action (see e.g. Heeran v Long Is. Power Auth. [LIPA], 141 AD3d at 565-566). Here, accepting all facts alleged in the complaint as true for the purposes of this motion, the Port Authority's remaining contentions likewise do not establish that the complaint fails to state a cause of action.
Conclusion
Accordingly, for all the reasons herein, the Supreme Court should have denied the Port Authority's motion pursuant to CPLR 3211(a)(7) to dismiss the complaint.
DUFFY, BARROS and CONNOLLY, JJ., concur.
ROMAN, J., dissents, and votes to affirm the order, with the following memorandum, in which RIVERA, J.P., concurs:
In this action to recover damages for wrongful death, the plaintiffs seek to hold the defendant, the Port Authority of New York and New Jersey (hereinafter the Port Authority), liable for the death of the decedent, who committed suicide by jumping off the George Washington Bridge. For the reasons that follow, I find that the Port Authority established that it was acting in a governmental, rather than a proprietary, capacity at the time the claim arose. Therefore, since the plaintiffs failed to allege facts sufficient to demonstrate that the Port Authority owed a special duty to the decedent, I agree with the Supreme Court's determination granting the Port Authority's motion pursuant to CPLR 3211(a)(7) to dismiss the complaint for failure to state a cause of action. Accordingly, I respectfully dissent.
On January 28, 2016, the decedent drove onto the George Washington Bridge (hereinafter the GWB), stopped his car, exited the vehicle, and jumped from the north walkway of the bridge into the Hudson River. The decedent died as a result of his injuries. Subsequently, the decedent's wife, individually and as administrator of the decedent's estate, and the decedent's daughter (hereinafter together the plaintiffs), commenced this action against the Port Authority, as the alleged owner and operator of the GWB, to recover damages for wrongful death. The plaintiffs alleged that the Port Authority was negligent in failing to maintain the GWB in a reasonably safe condition, including failing to install suicide-prevention barriers along the pedestrian walkways of the bridge despite being aware of the "extraordinary number of suicides attempted at the location."
The Port Authority moved pursuant to CPLR 3211(a)(7) to dismiss the complaint for failure to state a cause of action. In support of its motion, the Port Authority contended that the measures it allegedly had a duty to undertake to prevent self-injury by those attempting to jump from the GWB fell within its general police powers and governmental functions. The Port Authority argued that, absent a special relationship, it generally was not responsible for allegedly failing to take certain security measures to prevent harm to an individual, such as the decedent, who had exited from his car onto a busy multi-lane roadway, scaled a barrier from the roadway onto a pedestrian walkway that was closed off to all pedestrians by a set of tall locked fences, and jumped over the [*6]railing to his death. The Port Authority contended that the plaintiffs could not establish that a special relationship was owed to the decedent, as they failed to plead, among other things, any facts that established actions taken by the Port Authority resulted in a justifiable reliance by the decedent prior to his decision to end his life.
In opposition, the plaintiffs argued, among other things, that their complaint concerned acts taken by the Port Authority in its capacity as a property owner, as opposed to the carrying out of a governmental function. Therefore, the plaintiffs argued that they were not required to establish the existence of a special relationship between the decedent and the Port Authority.
In the order appealed from, the Supreme Court granted the Port Authority's motion, finding that the Port Authority did not have a duty to prevent the decedent's suicide. The plaintiffs appeal.
In considering a motion pursuant to CPLR 3211(a)(7) to dismiss for failure to state a cause of action , the court must accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (see Leon v Martinez, 84 NY2d 83, 87-88; Patel v Gardens at Forest Hills Owners Corp., 181 AD3d 611, 612).
When a negligence claim is asserted against a governmental entity, the first issue for the court to decide is whether the municipal entity "'was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose'" (Tara N.P. v Western Suffolk Bd. of Coop. Educ. Servs., 28 NY3d 709, 713, quoting Applewhite v Accuhealth, Inc., 21 NY3d 420, 425). A governmental entity performs a purely proprietary function when its activities essentially substitute for or supplement traditionally private enterprises (see Applewhite v Accuhealth, Inc., 21 NY3d at 425). "Proprietary functions include, for example, the maintenance of roads and highways in a reasonably safe condition" (Heeran v Long Is. Power Auth. [LIPA], 141 AD3d 561, 563, affd sub nom. Connolly v Long Is. Power Auth., 30 NY3d 719; see Wittorf v City of New York, 23 NY3d 473, 480). When a government entity acts in a proprietary capacity, it is subject to suit under the ordinary rules of negligence (see Tara N.P. v Western Suffolk Bd. of Coop. Educ. Servs., 28 NY3d at 713; Heeran v Long Is. Power Auth. [LIPA], 141 AD3d at 563).
"In contrast, acts undertaken for the protection and safety of the public pursuant to the general police powers are governmental in nature" (Tara N.P. v Western Suffolk Bd. of Coop. Educ. Servs., 28 NY3d at 713 [internal quotation marks omitted]). "If it is determined that a municipality was exercising a governmental function, the next inquiry focuses on the extent to which the municipality owed a 'special duty' to the injured party. The core principle is that to sustain liability against a municipality, the duty breached must be more than that owed the public generally" (Applewhite v Accuhealth, Inc., 21 NY3d at 426 [internal quotation marks omitted]).
"A governmental entity's conduct may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions" (Miller v State of New York, 62 NY2d 506, 511-512). "The metaphorical continuum begins at one end with the purest proprietary matters and 'extends gradually out to more complex measures of safety and security for a greater area and populace, whereupon the actions increasingly, and at a certain point only, involve governmental functions'" (Sebastian v State of New York, 93 NY2d 790, 793, quoting Miller v State of New York, 62 NY2d at 512). "Consequently, any issue relating to the safety or security of an individual claimant must be carefully scrutinized to determine the point along the continuum that the State's alleged negligent action falls into, either a proprietary or governmental category" (Miller v State of New York, 62 NY2d at 512). "It is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability" (Weiner v Metropolitan Transp. Auth., 55 NY2d 175, 182; see Matter of World Trade Ctr. Bombing Litig., 17 NY3d 428, 447).
The Unconsolidated Laws provide that "[t]he construction, maintenance and operation of vehicular bridges and tunnels within the . . . port of New York district . . . are . . . for [*7]the benefit of the people of the states of New York and New Jersey, for the increase of their commerce and prosperity and for the improvement of their health and living conditions" (McKinney's Uncons Laws of NY § 6515). As such, the Port Authority "shall be regarded as performing an essential governmental function in undertaking the construction, maintenance and operation thereof and in carrying out the provisions of law relating thereto" (McKinney's Uncons Laws of NY § 6515). The legislative declaration that a governmental entity is engaging in an essential government function, though relevant in other legal contexts, is not determinative with respect to the applicability of the governmental immunity doctrine to shield the entity from tort liability (see Heeran v Long Is. Power Auth. [LIPA], 141 AD3d at 566).
Notwithstanding, the specific act or omission out of which the instant injury is claimed to have arisen is the Port Authority's alleged failure to maintain the GWB in a reasonably safe condition so as to prevent a suicide. In this regard, the complaint alleges that the Port Authority had a duty to the public "to protect public safety," "to prevent suicide," "[t]o not increase the risk of suicide by inaction," "[t]o remove any hazard that may have the potential to serve as [a] 'means of suicide,' " and "[t]o protect human life." The complaint further alleges, among other things, that the Port Authority was negligent in "failing to provide for the safety and protection [of] vulnerable or impulsive individuals." The foregoing allegations are more akin to the governmental function of providing protection and security for the public, including those with mental health issues, than to the simple proprietary function of maintaining roads and highways in a reasonably safe condition for their intended use (see Clinger v New York City Tr. Auth., 85 NY2d 957, 959; cf. Wittorf v City of New York, 23 NY3d at 480).
Contrary to the position of our colleagues in the majority, Turturro v City of New York (28 NY3d 469) is distinguishable and does not warrant a contrary result. In Turturro, the plaintiffs commenced an action against, among others, the City of New York to recover damages for personal injuries the infant plaintiff sustained while riding his bicycle when he was struck by a speeding vehicle (see id. at 474-475). The specific act or omission by the City that allegedly caused the infant plaintiff's injuries was the City's failure to adequately study or implement roadway design changes intended to reduce speeding (see id. at 483, 488). Consequently, the Court of Appeals determined that the City was acting in a proprietary capacity, and, therefore, the plaintiffs had no obligation to prove special duty (see id. at 488). In the present case, by contrast, the incident did not involve the design and safety of the GWB in connection with vehicular or pedestrian travel. Rather, the incident arose out of the decedent's conduct in stopping his car on the GWB, exiting the vehicle, traversing the road by foot to reach the walkway, and then jumping to his death.
The plaintiffs' allegations of negligence based upon the Port Authority's alleged failure to have adequate safeguards in place to prevent the decedent's suicide relate primarily to the governmental function of providing safety and security. Thus, the plaintiffs were required to allege that the Port Authority owed a special duty to the decedent, as opposed to the public generally (see Valdez v City of New York, 18 NY3d 69, 75; Rozell v Milby, 98 AD3d 960, 961). However, the plaintiffs failed to do so. There were no allegations, for instance, of direct contact between the Port Authority's agents and the decedent, or that the decedent justifiably relied upon an affirmative undertaking by the Port Authority to protect him from committing suicide (see Applewhite v Accuhealth, Inc., 21 NY3d at 431; Laratro v City of New York, 8 NY3d 79, 83). There are only a few recognized situations where liability exists for the failure to prevent a suicide, including, for example, "where a facility such as a hospital or jail which is in actual physical custody of an individual fails to take reasonable steps to prevent a reasonably foreseeable suicide" (Cygan v City of New York, 165 AD2d 58, 67, citing Gordon v City of New York, 70 NY2d 839, 840). No such circumstances are present in this case. Indeed, while the allegations in the instant complaint are specific to the GWB, the relief sought by the plaintiffs herein could result in an unwarranted expansion of liability to all municipal bridge operators.
It bears noting that courts in other jurisdictions have similarly declined to impose liability on municipal entities based on the alleged failure to institute adequate safeguards to prevent individuals from committing suicide by jumping from a bridge (see Milligan v Golden Gate Bridge [*8]Hwy. & Transp. Dist., 120 Cal App 4th 1, 7; Nelson v Massachusetts Port Auth., 55 Mass. App. Ct. 433, 436, 771 NE2d 209, 212).
Therefore, inasmuch as the Port Authority was engaged in a governmental function under the circumstances of this case, and the plaintiffs failed to allege facts sufficient to show that the Port Authority owed a special duty to the decedent, I agree with the Supreme Court's determination granting the Port Authority's motion pursuant to CPLR 3211(a)(7) to dismiss the complaint for failure to state a cause of action.
Accordingly, I would affirm the order.
ENTER:
Aprilanne Agostino
Clerk of the Court