Feldman v Port Auth. of N.Y. & N.J. (2021 NY Slip Op 01719)





Feldman v Port Auth. of N.Y. & N.J.


2021 NY Slip Op 01719


Decided on March 23, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 23, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta
Judith Gische Troy K. Webber Lizbeth González


Index No. 153624/18 156869/18 Appeal No. 13375-13375A Case No. 2019-281 

[*1]Isaac Feldman etc., et al., Plaintiffs-Appellants,
v
The Port Authority of New York and New Jersey, Defendant-Respondent. [And Another Action]



Plaintiffs appeal from the orders of the Supreme Court, New York County (Arlene P. Bluth, J.), entered December 13, 2018, which granted defendant Port Authority's motions to dismiss the complaints.




Costigan Law PLLC, New York (William F. Costigan of counsel), for appellants.
Port Authority Law Department, New York (Cheryl Alterman of counsel), for respondent.



Webber, J. 


These wrongful death actions arise from plaintiffs' decedents' suicides by jumping off the George Washington Bridge (GWB). On July 26, 2017, Lael Feldman, a 24-year-old jazz singer, walked along the south walkway of the GWB and, shortly before midnight, jumped over the four-foot railing into the Hudson River, resulting in her death. The next day, Andrew Donaldson, a 49-year-old architect and father of two children, also walked along the south walkway of the GWB and jumped over the railing to his death.
In April 2018, plaintiff Marybeth Donaldson, individually and as Administrator of the Estate of Andrew Donaldson, and as parent and natural guardian of A.D. and C.D., commenced an action against the Port of Authority of New York and New Jersey (Port Authority). Plaintiffs Isaac Feldman, individually and as Voluntary Administrator of the Estate of Lael Feldman, and Marla Mase also commenced an action against the Port Authority.
In each case, plaintiffs allege that the GWB was unreasonably dangerous because the low four-foot railing on the south walkway facilitated suicides and that the Port Authority had long been aware that the bridge had become a "suicide magnet" based upon hundreds of deaths that had occurred at the bridge over the decades preceding these cases. The complaints allege that suicide attempts at the GWB have occurred at the rate of approximately 1 every 3 1/2 days, and that about 93 deaths occurred from 2009 up to 2016. The complaints assert that the Port Authority, as the owner of the GWB, "owed a duty to the public," including to "protect the public from foreseeable harm," "take reasonable steps to protect public safety," "take reasonable steps to prevent suicide," "not increase the risk of suicide by inaction," and "protect human life." Additionally, plaintiffs allege that the Port Authority "failed to exercise reasonable care in constructing, operating, and maintaining the [GWB]" and were negligent "in falling to provide for the safety and protection for vulnerable or impulsive individuals."
The Port Authority moved to dismiss the complaints for failure to state a cause of action on the ground that it was acting in its governmental, rather than proprietary, capacity when the incidents occurred and plaintiffs failed to show that it owed the decedents a special duty. The Port Authority also argued that at the time of the incidents it had neither physical custody of the decedents and the expertise to detect suicidal tendencies nor the control necessary to care for their well-being.
For the reasons stated below, we find that the motion court erred [*2]in granting the Port Authority's motion pursuant to CPLR 3211 to dismiss the complaints for failure to state a cause of action.
On a CPLR 3211(a)(7) motion to dismiss for failure to state a cause of action, "the complaint must be construed in the light most favorable to the plaintiff and all factual allegations must be accepted as true" (Alden Global Value Recovery Master Fund, L.P. v KeyBank N.A., 159 AD3d 618, 621-622 [1st Dept 2018]). Further, a motion court must only determine "whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87—88 [1994]). "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]; see Johnson v Proskauer Rose LLP, 129 AD3d 59, 67 [1st Dept 2015]).
Viewing the allegations of the complaint in the light most favorable to plaintiff, we find that plaintiffs have set forth sufficient facts which, if true, show that the Port Authority, as owner of the GWB, was acting in a proprietary capacity in the design and maintenance of the bridge, and, therefore was subject to suit under the ordinary rules of negligence applicable to nongovernmental parties.
When the liability of a governmental entity is at issue, the court must ascertain whether the governmental entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose (see Miller v State of New York, 62 NY2d 506, 513 [1984]). If the governmental entity's actions fall within the proprietary realm, it is subject to suit under the ordinary rules of negligence applicable to nongovernmental parties (see Applewhite v Accuhealth, Inc., 21 NY3d 420, 425 [2013]). " 'It is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability, not whether the agency involved is engaged generally in proprietary activity or is in control of the location in which the injury occurred' " (Miller v State of New York, 62 NY2d at 513, quoting Weiner v Metropolitan Transp. Auth., 55 NY2d 175, 182 [1982]).
In Wittorf v City of New York (23 NY3d 473, 479 [2014]), the plaintiff commenced a personal injury action against the City of New York alleging its negligence in the maintenance, repair, and control over the roadway, proximately caused her to sustain injuries while she was riding her bicycle on the 65th Street transverse in Central Park. The Court of Appeals rejected the City's argument that it was performing a governmental function in the repair of the roadway. The Court found that since the City was engaged in a proprietary function in maintaining and repairing the roadway, " 'it is subject to suit under the ordinary rules of negligence applicable to nongovernmental parties' " (id.,quoting Applewhite v Accuhealth, Inc., 21 NY3d at 425; see Matter of World Trade Ctr. Bombing [*3]Litig., 17 NY3d 428, 446-447 [2011]).
Similarly, in Turturro v City of New York (28 NY3d 469 [2016], affg 127 AD3d 732 [2d Dept 2015]), the 12-year-old plaintiff was struck by a vehicle when attempting to cross a four-lane road on his bicycle. The infant plaintiff, and his mother alleged fault with, inter alia, the City's failure to "adequately study or implement roadway design changes . . . in response to repeated complaints" (28 NY3d at 488). The Court of Appeals specifically rejected the City's argument that in essence the plaintiffs were claiming failure on the part of the City to allocate adequate police resources to prevent illegal activity, i.e., a failure to enforce speed limits on the roadway (28 NY3d at 480-481). The Court affirmed the conclusion of the Appellate Division Second Department that the frequency of speeding cars on the roadway could be found to be unreasonably dangerous and the City was negligent in not studying the problem and implementing a plan to address it (see 28 NY3d at 485; 127 AD3d at 738). Further, it found that such omissions fell within its proprietary function subject to the ordinary rules of negligence (28 NY3d at 479-482). Specifically, theCourt of Appeals held that the City could not rely on the governmental function immunity defense, as "there was a rational process by which the jury could conclude that . . . speeding was a foreseeable consequence of the City's failure to study or implement traffic calming measures" (id. at 488). Notably, the facts here are virtually identical to those in Perlov v Port Auth. of N.Y. & N.J. (189 AD3d 1624 [2d Dept 2020]), where the plaintiffs also sought to hold the Port Authority liable for the death of the decedent, who also committed suicide by jumping off the GWB. In that complaint, the plaintiffs alleged "that there is a suicide attempt at the bridge every 3½ days, and that 93 people have died from jumping off the bridge's pedestrian walkways in the 7 years leading up to [the] alleged suicide of the decedent" (id. at 1625). The Port Authority moved to dismiss the complaint on the ground that it was acting in a governmental capacity and the complaint did not allege the existence of a special duty owed by the Port Authority to the decedent. Supreme Court granted Port Authority's motion on the basis that it did not have a duty to prevent the decedent's suicide. On appeal, the Second Department reversed, finding that the Port Authority was acting in a proprietary capacity in the design and maintenance of the bridge, and, therefore was subject to suit under the ordinary rules of negligence applicable to nongovernmental parties (see id. at 1627-1628, citing Turturro v City of New York, 28 NY3d at 478-480). The Second Department held that dismissal was not warranted because the plaintiffs stated a claim against the Port Authority in its proprietary capacity (Perlov at 1628, 1631). While we are not bound by the decision in Perlov, we agree with the reasoning employed [*4]by our sister Appellate Department.
Here, the act complained of was the failure of the Port Authority to maintain the GWB and its pedestrian walkway in reasonably safe condition for those who foreseeably use it, which does not implicate its policing function. There are no allegations that the Port Authority failed to provide protection and security. Rather, the allegation is that it failed to maintain the GWB in a reasonably safe condition by negligently failing to install suicide barriers along the walkways to prevent suicides. As such, the Port Authority is subject to suit under the ordinary rules of negligence. The scope of its duty is shaped by the foreseeability of harm. The intentional acts of plaintiffs' decedents in jumping from the bridge were "itself the foreseeable harm that shapes the duty imposed," and in such circumstances, "the defendant who fails to guard against such conduct will not be relieved of liability when that act occurs" (Kush v City of Buffalo, 59 NY2d 26, 33 [1983]).
We find that the complaints sufficiently allege that the low railing of the bridge, and Port Authority's awareness of the frequent suicide attempts on the bridge over previous decades, give rise to a duty to install fencing to protect against foreseeable harm to withstand a motion to dismiss (see Perlov v Port Auth. of N.Y. & N.J., 189 AD3d at 1624).
Accordingly, the orders of the Supreme Court, New York County (Arlene P. Bluth, J.), entered December 13, 2018, which granted defendant Port Authority's motions to dismiss the complaints, should be reversed, without costs, and the motions denied.
Orders, Supreme Court, New York County (Arlene P. Bluth, J.), entered December 13, 2018, reversed, without costs, and the motions denied.
Opinion by Webber, J. All concur.
Acosta, P.J., Gische, Webber, González, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 23, 2021